**Carol ROBERTS et vir., as next friends of Stacey Roberts, a minor, Appellants,**

v.

**Latayne McIntyre PARRISH et al., Appellees.**

**No. 5799.**

Court of Civil Appeals of Texas, Waco.

June 1, 1978.

Rehearing Denied June 29, 1978.

W. Jiles Roberts, Houston, for appellants.

James H. Barker and Alice Giessel, Talbert, Giessel & Stone, Russell H. McMains, Fulbright & Jaworski, J. David Reed and Kenneth Tekell, Tekell, Book & Matthews, Bernus Wm. Fischman, Lackshin, Nathan & Berg, Houston, for appellees.

HALL, Justice.

Appellant Mrs. Carol Roberts was backing from a driveway on premises controlled by National Motels into a public street in the City of Pasadena when the automobile she was driving was struck by one being driven by Mrs. Latayne McIntyre Parrish. Mrs. Roberts was pregnant at the time of the collision. The day the collision occurred, September 1, 1971, was also the day Mrs. Roberts and her medical doctors had determined was the delivery day for the child. However, the child, a girl named "Stacey," was not born until five weeks later, on October 7, 1971.

Mrs. Roberts and her husband, R. J. Roberts, initiated this suit on August 30, 1973, for damages caused them individually by the collision. With leave of court, the minor child, Stacey, was added as a plaintiff on August 5, 1975. The case proceeded with the parents suing individually and as next friends for the minor child. They named as defendants Mrs. Parrish and her

husband, National Motels, Universal Waste Control Systems, Inc., and Sanitary Refuse Systems, Inc. In their last amended petition, filed on September 16, 1976, they pleaded negligent causation for the collision against Mrs. Parrish in several particulars; and they alleged that the other defendants negligently caused the collision by placing excessively high waste containers where they blocked the view of drivers on the public street. They alleged that Mrs. Roberts was twenty-six years of age with a life expectancy of 50.9 years; that as a result of the collision she sustained physical pain, mental anguish, physical disability, loss of earning capacity, and has required medical services, all of which will continue into the future; that they have been and will be caused to incur medical, hospital, dental, and related expense required for the treatment of Stacey until she becomes eighteen years of age; that Stacey's birth was delayed for several weeks as a result of the collision, causing her injury and illness; that the injuries and illness have caused and will cause the child to sustain physical pain and mental anguish and will cause her to sustain physical disability and loss of earning capacity and require medical services and expense subsequent to her becoming eighteen years of age through her life expectancy of 74.9 years. Individually, they prayed for $35,000.00 as a result of injuries to Mrs. Roberts; and for $5,000.00 for their expenses incurred and to be incurred for treatment of the child's injuries and illness during her minority. As next friends of the child they prayed for $250,-000.00 for her damages.

When the case was first called for trial, on September 8, 1976, the court determined that there was an apparent conflict of interest between the parent plaintiffs and the minor plaintiff, and appointed the Honorable Bernus Wm. Fischman as attorney and guardian ad litem "to represent and protect the interests of the minor child." This appointment was in compliance with the provisions of Rule 173, Vernon's Tex.Rules Civ. Proc. The trial of the case was then postponed until September 27, 1976, to permit the plaintiffs to take the deposition of a medical witness which related to the child's case, and, no doubt, to permit the guardian ad litem to prepare for trial.

A pre-trial conference was held on September 24, 1976. By the time of this conference the parents had learned that the guardian ad litem had negotiated a potential settlement with the defendants on behalf of the minor for $1500.00. The parents vigorously opposed this settlement. To avoid it, and to remove any conflict between them and the child, they moved to non-suit their cause of action for medical expenses because of injuries to the minor and the cause of action they filed as next friends on behalf of the minor, thereby leaving only the suit they pleaded individually for personal injuries suffered by Mrs. Roberts. The record shows that since birth the child has suffered with allergies, that the enamel of her teeth has deteriorated resulting in the removal of several teeth, that her fingernails are deformed, that she has visual and perception problems compatible with learning disabilities, that she is hyperactive, and that she has been treated by fourteen physicians and two dentists for those maladies. It was (and is) the position of the parents and their attorney that those physical problems were caused by a post-mature birth of five weeks caused by the collision, or by certain drugs and medications administered to the mother as a result of the collision before the child was born, or by a combination of the delayed birth and the drugs; and that, given time (which may take several months or several years), they can establish their contentions with medical evidence. In the mother's words, they viewed the $1500.00 settlement figure as "ridiculously" negligible when compared to the minor's injuries and expenses.

In support of the parents' motion for non-suit at the pre-trial conference, their attorney stated to the court, "I personally am prepared today, to insure that the child will not lose anything, to deposit that amount of money [$1500.00], myself, in the registry of the court for use and benefit of the child. . . . The interest of the

child cannot be hampered if I put $1500.00 in the registry of the court for the use and benefit of that child and let the case not be disposed of on the merits. And, if there's any loss, I take it." In response, the guardian ad litem told the court that after a thorough investigation into the merits of the case he had concluded that negligence on the part of the defendants causing the collision was doubtful, that whether the birth of the child was in fact post-mature was also "very questionable," and that even if the birth of the child was actually delayed because of the collision, the possibility that the child's physical problems were caused by the delay was "speculative and remote" under present medical proof. He then stated to the court, "I do not approve of an attorney becoming an underwriter or surety for his clients' case, to the extent of his time, but I don't see how, in the exercise of my duty and based on what I have already told this court, that I could reject that offer. If I have the power to appear, with the court's approval I will accept his offer, and then upon drawing up the appropriate papers, which I will do, and this money be deposited in the registry of the court, I will resign with the court's approval the position of attorney ad litem and allow counsel to go forward as a representative of the child. I think if I have gotten $1500.00 for the child from whatever source then she is protected. If he wants to do that, which in my opinion is poor judgment, but if he wants to do that, I say let him do it if he is so sure of the developments that will occur and that the case can be won on the merits on the theory that he has advanced, and then I would respectfully urge the court to approve it because I think the child can't lose on that deal."

The court then told the parties to "get back to what we are here about," learned that plaintiffs had not yet taken the needed deposition, instructed the parties to immediately arrange for the taking of the deposition, expressly declined to act on plaintiffs' motions for non-suit, and reset the trial date for November 1, 1976. Plaintiffs emphasized to the court that even with the deposition they probably would need four to six months to prepare for trial.

When the case was called for trial on November 1, 1976, the guardian ad litem recommended the $1500.00 settlement to the court for approval. Before the settlement agreement was heard by the court, plaintiffs again expressed their opposition to it. They moved the court to non-suit their individual suits and to also non-suit the cause of action they filed as next friends on behalf of the minor. Concurrently, and in connection with the motion, plaintiffs' attorney again offered to pay $1500.00 into the registry of the court for the sole use and benefit of the minor and stated to the court that he was "ready, willing and able" to do so. Plaintiffs reasoned that once non-suited their individual causes of action would be forever barred by the two-year statute of limitation thereby permanently eliminating any claimed conflict between them and the child's interests; that their deposit in lieu of the settlement left no benefit to the child by reason of the settlement; that to approve the settlement would end the child's case on the merits; and that to grant the motions for non-suit and permit their tender would leave the child's case open for possible favorable development and could only benefit and in no way harm the child's best interests.

The court granted plaintiffs' motions for non-suit on their individual cases, but refused to approve the motion to non-suit the child's case.

During the time between the hearing on September 24th and the one on November 1st, the guardian ad litem prepared an instrument denominated "Agreed Order Granting Nonsuit" which provided for the $1500.00 deposit into the registry of the court by plaintiffs' attorney "to be held unconditionally for the use and benefit of the minor child," the non-suiting of the child's cause of action, and the discharge of the court-appointed guardian ad litem. It contained a recited finding that those measures would be in the best interests of the child. At the hearing on November 1st, after the plaintiffs' individual causes had been non-suited, but before the settlement

agreement was heard, plaintiffs moved the court to enter this order. Thereupon, the guardian ad litem made this statement to the court: "It is perfectly true that the order to which [plaintiffs' attorney] has referred was prepared by me after he insisted or requested on several occasions that I do so. I prepared that order and I allowed [plaintiffs' attorney] to pick it up and I advised him that if the court were so inclined to grant such an order that was the form of order that I would be agreeable to, and I am not joining in the motion to have the agreed order entered and I would suggest to the court that while it's true that the child would probably come out with the same amount of money—there is, I think, some serious questions here of the propriety of this device, if you will, that may raise a question, and I simply want to clarify it for the purpose of the record that I am not participating in the motion by virtue of the fact that I drafted up the words on that piece of paper." The court refused to consider the proposed order, and proceeded to hear the settlement agreement.

In support of his recommendation for approval of the settlement, the guardian ad litem told the court, "I have made a determination that there is no conceivable way that we could prevail now or at any time in the future in this case. . . . and I made the determination that the case had to be settled based upon whatever I could possibly persuade the defendants to pay in settlement of the case." The record shows that he based those conclusions upon a study of causal responsibility for the collision; a detailed examination and analysis of the trial court record which contained among other things depositions of the parties, depositions of physicians who treated Mrs. Roberts during her pregnancy and after the birth of the child, depositions of physicians who have treated the child since birth for her physical problems, and hospital records relating to mother and child; and independent conferences with medical experts about the relationship between the collision and post-mature delivery and the child's problems. No one questions the guardian ad litem's good faith in recommending the settlement.

After the hearing, the court approved the settlement agreement and rendered judgment based upon it. The judgment recited that the court was of the opinion that the settlement was in the best interests of the minor plaintiff, awarded the minor a recovery of $1500.00 from defendants, required that amount deposited into the court's registry for the use and benefit of the minor, recited that the deposit had been made and the award had been fully and finally satisfied, and adjudged that the defendants were "fully and finally relieved and discharged from any and all liability to the minor plaintiff as a result of the accident made the basis of this suit."

Among other complaints on appeal the parents asserted the court erred in failing to accept their tender of the amount of the settlement and non-suit the child's cause of action, and in approving the settlement agreement.

Responding to plaintiffs' request for findings of fact and conclusions of law, the court expressly determined that "The maladies and illness from which the minor, Stacey Roberts, is said to suffer have not been shown to have been proximately caused or to have resulted from the occurrence made the basis of this lawsuit." Upon this determination the court based the further conclusion that approval of the settlement was in the best interest of the minor. As we have said, the record before the trial court contained depositions of the parties and many physicians, and records of several hospitals. Although granted opportunity to supplement the appellate record, even after oral submission, plaintiffs have brought forward to this court only one deposition and the records of one hospital. In the absence of a complete statement of facts we must, and do, presume that the record before the court supported the determination that there was no showing of causal connection between the collision and the child's physical problems. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.Sup.1968).

A guardian ad litem is appointed in cases of this nature to assist the court in protect-

ing the rights and effecting the best interests of the minor plaintiff. *Wright v. Jones*, 52 S.W.2d 247, 252 (Tex.Comm.App. 1932). Under the circumstances existing at the time the parents' motion to non-suit the child's case was submitted to the court, we believe it was the court's duty to first conduct a hearing on the settlement negotiated and recommended by the guardian ad litem before it ruled on the motion, and that it acted properly in doing so. Again, in the absence of the complete record made on that hearing, we must presume the record supported the court's refusal to accept the parents' $1,500.00 tender and non-suit the child's case, and its approval of the settlement agreement, as being in the best interests of the child. *Mays v. Pierce*, 154 Tex. 487, 281 S.W.2d 79, 82 (1955); *Guthrie v. National Homes Corporation*, 394 S.W.2d 494, 495 (Tex.Sup.1965).

Appellants' points and contentions are overruled. The judgment is affirmed.