**Kassie Renee BYRD, Appellant,**

v.

**Katherine WOODRUFF, the Law Firm of Beggs & Woodruff, Jay Downs, and the Law Firm of Spears, Busch & Downs, Appellees.**

No. 05–93–00020–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1994.

694

Ben C. Martin, Joe Hill Jones, Dallas, for appellant.

Charles T. Frazier, Jr., Dwayne J. Hermes and Andrea M. Kuntzman, Dallas, for appellees.

Before BAKER, BURNETT and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This is a summary judgment case. Kassie Renee Byrd sued Katherine Woodruff and her former and current law firms for legal malpractice. She also sued her guardian ad litem, Jay Downs, and his law firm for breach of his duties as a guardian ad litem. The district court granted Woodruff and Downs summary judgment, without specifying the grounds for its ruling. Kassie asserts that the district court erred by granting summary judgment on any of the grounds raised in Downs's and Woodruff's motions.

We hold that a guardian ad litem appointed under rule 173 of the rules of civil procedure in the context of a settlement hearing has fiduciary duties to the minor and can be held liable for a breach of those duties. We conclude that the district court properly granted summary judgment on some of Kassie's claims against Downs and the Law Firm of Spears, Busch & Downs and on some of Kassie's claims against Woodruff and the Law Firm of Beggs & Woodruff. We affirm in part the summary judgments granted to Downs and his law firm and Woodruff and her law firm. We reverse the district court's judgment in all other respects and remand these remaining claims to the district court for further proceedings.

## BACKGROUND FACTS

Kassie was involved in an accident with a riding lawn mower. Woodruff represented Kassie, a minor, in two separate lawsuits, styled:

- *Stephen Byrd and Debbie Byrd, individually and as next friend of Kassie Renee Byrd, a Minor v. Phillip Riddle, et al.,* filed in the 199th Judicial District Court

of Collin County, Texas (Collin County suit); and

- *Stephen Byrd and Debbie Byrd, individually and as next friend of Kassie Renee Byrd, a Minor v. HCW, Inc. et al.,* filed in the 134th District Court of Dallas County, Texas (Dallas County suit).

The 134th District Court appointed Downs as Kassie's guardian ad litem in the Dallas County suit. Downs did not participate in the Collin County suit. Both lawsuits resulted in several settlements.

With respect to the Collin County suit, the record does not contain a statement of facts for the settlement hearing or a copy of the 199th Judicial District Court's final judgment. In the Dallas County suit, the parties reached the following three settlements:

(1) a settlement with Dr. Smilack in the amount of $10,000 of which Kassie was apportioned $4000 (Smilack settlement);

(2) a settlement with Humana of Texas in the amount of $45,000 of which Kassie was apportioned $19,000 (Humana settlement); and

(3) a joint settlement with Drs. Rosen and Glidden in the amount of $250,000 of which Kassie was apportioned $97,038.67 (Rosen & Glidden settlement).

The 134th Judicial District Court conducted a prove-up hearing on each of the settlement agreements.

At the prove-up for the Smilack and Humana settlements, Kassie testified that she believed the settlements to be in her best interest. Downs, the court-appointed guardian ad litem, testified that after reviewing the medical records and talking with Kassie and her parents, he believed that Kassie had suffered a considerable amount of damages. He further believed that proving proximate cause would be very difficult. Downs testified that, in light of the heavy burden to show proximate cause, the settlement was entirely fair and reasonable and in the best interests of Kassie and her parents. Downs requested the court to approve the settlements. The district court accepted the Smilack and Humana settlements and awarded Downs $1000 in guardian ad litem fees. The

district court ordered that the sums apportioned to Kassie, $19,000 from the Humana settlement and $4000 from the Smilack settlement, be paid into the Dallas County court registry. The district court further ordered the Smilack settlement proceeds invested in an interest-bearing account.

At the prove-up for the Rosen & Glidden settlement, Kassie testified that she believed the settlement to be fair and equitable. Woodruff introduced a disbursement sheet showing the distribution of the settlement funds. The disbursement, however, was subject to estimated payments for certain litigation costs and medical expenses. Downs testified that he reviewed and approved the disbursement figures. The district court found that the compromise agreement was in Kassie's best interest and entered final judgment that the entire $250,000 settlement figure be paid into Woodruff's attorney trust account. The district court approved Downs's actions in compromising and settling the suit and fixed Downs's guardian ad litem fees at $3500.

Ten days after Kassie reached her majority age of eighteen, Kassie and her father and stepmother, Stephen and Debbie Byrd, met at Woodruff's office to execute a trust agreement for Kassie's benefit. The trust agreement appoints Stephen Byrd as trustee. The agreement creates an irrevocable trust, subject to the court's amendment, modification, or revocation. The trust property includes Kassie's settlement proceeds from the Rosen & Glidden, Smilack, and Humana settlements, and $12,500 plus interest from the Collin County suit. Under the trust agreement, Kassie is to receive various distributions until she reaches the age of forty, at which time the trust terminates. In executing the trust agreement, Kassie acknowledged under oath that: she was over the age of eighteen; she had been informed that, as a matter of law, she had the right to receive and manage all settlement proceeds that were the subject of the trust; she was under no coercion or threat to execute the trust agreement; and her decision to execute the trust agreement was made of her own free will.

A check for $79,616.22, representing the remaining Rosen & Glidden settlement proceeds, was drawn on Woodruff's attorney trust account the same day the parties executed the trust.[1] Kassie endorsed the check and made same payable to "Stephen Byrd—Trustee." Kassie also instructed Woodruff to draft motions for the release of the settlement proceeds deposited in the Dallas County and Collin County court registries. The Collin County check was mailed. Debbie Byrd picked up the Dallas County check at Woodruff's office.

Kassie brought the present lawsuit against her parents, Woodruff and her former and current law firms, and Downs and his law firm. Downs and Woodruff moved for summary judgment. Four days before the summary judgment hearing, Kassie filed a second amended original petition.[2] Kassie alleges that Downs, as her guardian ad litem, and Woodruff, as her attorney, were derelict in their duties regarding each settlement and the trust agreement.

The second amended petition alleges that Woodruff was negligent in failing to set up proper safeguards to protect the settlement proceeds in the Collin County suit. That petition asserts that the Collin County judgment provided for immediate payment of $6000 to Kassie, a minor at the time of receipt, and for $12,500 to be placed in the registry of the court and invested in an interest-bearing account until Kassie reached majority.[3] Kassie alleges that Woodruff should have directed the $6000 payment deposited in the court's registry and that Woodruff did not ensure that she received these settlement monies upon reaching the age of majority.

The petition asserts that Kassie's step-mother, Debbie Byrd, obtained the checks and forged Kassie's name, depriving her of the funds.

Kassie further claims that Downs and Woodruff were derelict in their duties by placing the Smilack settlement proceeds in the Woodruff trust account instead of putting the funds in the court's registry to be properly invested in an interest-bearing account. She also alleges that Downs and Woodruff failed to obtain and pay her the settlement proceeds when she reached majority. Further, Kassie asserts that Downs and Woodruff did not invest the Humana settlement proceeds and did not ensure that she received these funds upon reaching majority.

Regarding the Rosen & Glidden settlement, Kassie claims that Downs and Woodruff were negligent in allowing a judgment that did not sufficiently allow the parties to ascertain their rights and obligations under the judgment and that they failed to apportion any of the $250,000 settlement proceeds to her. She alleges further that Downs and Woodruff allowed settlement proceeds made on her behalf in the amount of $170,383.78 to be paid to third parties without court authorization.

The petition additionally alleges that Downs and Woodruff drafted an irrevocable trust agreement that names Stephen Byrd as trustee, Debbie Byrd as successor trustee, and Katherine Woodruff as second successor trustee. Kassie alleges that Downs and Woodruff failed to ensure compliance with Chapter 142 of the Texas Property Code in establishing the trust. She also asserts that

1. The record shows that in December 1989, Beggs & Woodruff disbursed an $18,000 check to Stephen Byrd as trustee for Kassie Byrd for the purchase of a new truck for Kassie. They disbursed another check later that same month in the amount of $2,732 for insurance on the truck.

2. The record gives no indication that the trial court refused leave to file nor does it contain a motion to strike the amended petition. The record is silent of any basis to conclude that the trial court did not consider the amended petition. Consequently, we presume that the trial court considered Byrd's second amended original petition when granting Woodruff's and Downs's motions for summary judgment. *See Goswami v.*

*Metropolitan Sav. & Loan,* 751 S.W.2d 487, 490 (Tex.1988).

3. The trust agreement shows that Kassie received $12,500 and $160,000 from the Collin County suit. According to the trust agreement and Woodruff's motion for summary judgment, the $12,500 was deposited into the court's registry and the $160,000 was placed in an investment annuity with payments being paid directly to Kassie over a period of twenty-four years. The $6000 payment at issue in this suit represents the first annuity payment made to Kassie at age sixteen. Kassie does not assert any claims with respect to any other annuity payments or the remaining annuity fund.

Downs and Woodruff allowed an irrevocable trust document to be drafted when by its terms such a document is revocable; they did not advise her that the trust was revocable; they either failed to advise her, or improperly advised her, on the safety of trust funds; and they either advised her to enter into an invalid trust agreement or failed to advise her that the trust agreement was invalid. Kassie further alleges that Downs and Woodruff did not arrange for the payment of court costs to her. Kassie also asserts claims for exemplary damages and attorney's fees against Downs and Woodruff.

Neither Woodruff nor Downs amended their motion for summary judgment after Kassie filed the second amended petition. After the summary judgment hearing, the district court granted Woodruff's and Downs's motions for summary judgment. Kassie nonsuited her claims against Woodruff, as second successor trustee, and her claim against Woodruff's former law firm, Beggs, Donahue, Woodruff & Alexander. The court dismissed without prejudice Woodruff's cross-claim against Downs. The district court signed its order granting summary judgment for all defendants, without specifying the grounds for its ruling. The district court severed Kassie's remaining claims against her parents, thereby making the summary judgment order a final judgment. Kassie appeals the district court's summary judgment granted to Katherine Woodruff and her current law firm, Beggs & Woodruff, (collectively Woodruff) and the summary judgment granted to Jay Downs and the Law Firm of Spears, Busch & Downs (collectively Downs).

### SUMMARY JUDGMENT

■ Summary judgment is designed to eliminate unmerited claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on fact issues. *Compton v. Calabria,* 811 S.W.2d 945, 949 (Tex.App.—Dallas 1991, no writ) (citing *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952)). The grounds for summary judgment must be presented in the summary judgment motion itself. *McConnell v. Southside Indep. Sch. Dist.,* 858

S.W.2d 337, 341 (Tex.1993). When an order granting summary judgment does not specify the grounds upon which it rests, the judgment will be affirmed on appeal if any of the grounds raised in the summary judgment motion are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

■ Summary judgment for a defendant is proper when the summary judgment evidence negates an essential element of the plaintiff's cause of action as a matter of law or establishes all elements of an affirmative defense as a matter of law. *See Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ On appeal, this Court considers all evidence accompanying the summary judgment motions in determining whether to grant a party's motion. *Edinburg Consol. Indep. Sch. Dist. v. St. Paul Ins. Co.,* 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, writ denied). The record shows that Downs filed a notice of intent to use specified summary judgment evidence and attached copies of the evidence to the notice. Woodruff's motion for summary judgment incorporates by reference all of Downs's summary judgment evidence. In determining whether the parties established their right to summary judgment, we review the evidence filed in support of Down's motion and relied upon by Woodruff.

## ATTORNEY MALPRACTICE

In point of error two, Kassie contends that the district court erred in granting Woodruff's motion for summary judgment. Kassie asserts that the evidence is insufficient to support summary judgment for Woodruff and that material fact issues exist precluding summary judgment on all or some of Kassie's claims of attorney malpractice.

Woodruff moved for summary judgment on the following grounds: (1) estoppel; (2) collateral estoppel; (3) ratification; (4) waiver; (5) Kassie already received payment of the sums for which she brought suit; (6) sufficient performance on Woodruff's part; (7) Woodruff was not negligent, as a matter of law, in failing to deliver funds; (8) Woodruff was not negligent in allowing a provision in the Collin County suit judgment providing for a payment to Kassie before she reached majority; and (9) Woodruff was under no duty to invest settlement funds deposited in the registry of the court. We first consider Woodruff's grounds that raise an affirmative defense to Kassie's claims.

### Estoppel and Collateral Estoppel

Woodruff asserts that the district court approved the settlements as fair and reasonable and that she relied upon Kassie's agreement to the terms and amounts of each settlement in obtaining the underlying judgments. Therefore, Woodruff maintains that the doctrines of estoppel and collateral estoppel preclude Kassie from asserting that the settlements were not fair and reasonable. She alleges further that Kassie is estopped from asserting that the trust should not have been established.

■■ However, Kassie does not challenge the fairness and reasonableness of the underlying settlements themselves. Nor does she challenge the establishment of a trust for her benefit. Rather, Kassie directs her complaints at Woodruff's conduct in representing her in the underlying suits and in creating the trust agreement. She complains of Woodruff's alleged failure to adequately manage and protect the settlement funds. The doctrine of collateral estoppel bars the relitigation in a subsequent action upon a different cause of action the issues of fact or

law actually litigated and essential to the prior judgment. *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1990). The parties did not litigate any issue about Woodruff's legal representation of Kassie in the prior suit. Collateral estoppel does not apply.

■■ Moreover, the doctrine of estoppel requires that the party claiming the estoppel must be without knowledge, or the means of acquiring knowledge, of the facts which the party to be estopped is alleged to have represented by her acts, conduct, or silence. *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). As Kassie's attorney, Woodruff knew, or should have known, of the facts and circumstances surrounding the judgment and creation of the trust. Woodruff was as competent as Kassie, if not more so, to evaluate the fairness of the settlements and the creation of the trust. There is no evidence that Woodruff was without such knowledge. Under these circumstances, estoppel does not apply. *See Simpson*, 724 S.W.2d at 108. Accordingly, summary judgment was not proper upon Woodruff's grounds of estoppel or collateral estoppel.

### Ratification and Waiver

■ Woodruff asserts that by accepting and endorsing the Rosen & Glidden check for $79,616.22, Kassie ratified and approved the Rosen & Glidden settlement and waived her right to complain about the settlement. Woodruff alleges further that in establishing the trust and funding it with the settlement proceeds obtained in the underlying suits, Kassie ratified and approved the settlements in all the suits.

■ Again, Kassie does not question the settlements themselves, only Woodruff's alleged mishandling of the settlement proceeds. There is no summary judgment evidence that Kassie knew, at the time she accepted the check and executed the trust agreement, of the facts on which she bases her malpractice claims. There can be no ratification or waiver from the acceptance of benefits by a person who did not have knowledge of all material facts. *See Frazier v.*

*Wynn,* 472 S.W.2d 750, 753 (Tex.1971). Accordingly, summary judgment was not proper on Woodruff's grounds of ratification or waiver.

### Allocation of Proceeds

▆▆ With respect to Kassie's claims surrounding the Rosen & Glidden settlement, Woodruff asserts that the district court's judgment properly allocates settlement proceeds to Kassie. Woodruff, therefore, maintains that there was sufficient performance on her part.

The summary judgment evidence shows that Woodruff introduced a settlement disbursement sheet at the prove-up. Woodruff reviewed the disbursement sheet with the district court. The court admitted it into evidence along with the settlement agreement, approved both documents, and entered judgment. The record demonstrates that the settlement proceeds were to be distributed according to the disbursement sheet and that the district court approved the distribution when it entered judgment. The disbursement sheet shows that Kassie was apportioned $97,038.67 out of the $250,000 settlement. The remaining settlement proceeds were allocated to cover litigation costs, Stephen Byrd's settlement recovery, and Kassie's remaining medical expenses. We conclude that the district court properly granted summary judgment against Kassie's claim that the judgment did not allocate settlement proceeds from the Rosen & Glidden settlement.

▆▆ In her second amended petition, Kassie also alleges that Woodruff negligently drafted and approved the Rosen & Glidden judgment without providing sufficiently certain terms to allow the parties to ascertain their rights and obligations under the judgment. In her motion for summary judgment, Woodruff does not address this more general claim of negligence about the final judgment. Woodruff moved for summary judgment only on the judgment's allocation of proceeds. Therefore, summary judgment was not proper on Kassie's entire claim of negligence in drafting and approving the Rosen & Glidden judgment without providing sufficiently certain terms to allow the parties to ascertain their rights and obligations.

### The Negligence Claims

Woodruff alleges that she was not negligent as a matter of law in handling the Smilack, Humana, and Collin County settlement proceeds because: (1) her duty to represent Kassie's "best interests" ended at the time the underlying judgments were obtained; (2) she had no duty to ensure that the $4000 Smilack settlement proceeds were paid into the registry of the court; (3) she had no duty to deposit the $6000 Collin County settlement proceeds in the court registry; (4) she had no duty to ensure that the funds held in the Collin County and Dallas County court registries were delivered to Kassie since the funds were tendered in the form of checks made payable to Kassie Byrd; (5) she had no duty to invest the Humana settlement proceeds deposited in the Dallas County court registry; and (6) she was not liable for the unforeseeable criminal acts of, or wrongful conversion by, third parties.

▆▆ The attorney-client relationship is a contractual relationship, whereby the attorney agrees to render professional services for the client. Such a contract may be either express or implied from the parties' conduct. *See Perez v. Kirk & Carrigan,* 822 S.W.2d 261, 265 (Tex.App.—Corpus Christi 1991, writ denied). The existence of an attorney-client relationship gives rise to corresponding duties on the attorney's part to use the utmost good faith in dealings with the client, to maintain the confidences of the client, and to use reasonable care in rendering professional services to the client. *See generally* TEX. DISCIPLINARY R.PROF. CONDUCT 1.01–8.05 (1989), *reprinted in* TEX.GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon Supp.1994) (STATE BAR RULES art. X, § 9). As long as the attorney-client relationship endures, these duties exist. If an attorney breaches her duties to her client, a malpractice claim may arise.

▆▆ An attorney malpractice claim is based on negligence. *Cosgrove v. Grimes,* 774 S.W.2d 662, 664 (Tex.1989). In a negligence action, the plaintiff must prove that there is a duty owed her by the defendant, a

breach of that duty, that the breach proximately caused her injury, and that she incurred damages. *Cosgrove,* 774 S.W.2d at 665 (citing *McKinley v. Stripling,* 763 S.W.2d 407 (Tex.1989)). The attorney is held to the standard of care that would be exercised by a reasonably prudent attorney. *Cosgrove,* 774 S.W.2d at 665. "The standard is an objective exercise of professional judgment, not a subjective belief that his acts are in good faith." *Cosgrove,* 774 S.W.2d at 665. If an attorney's decision is that which a reasonably prudent attorney could make in the same or similar circumstances, there is no negligence even if an undesirable result occurs. The attorney's conduct is evaluated based on the information the attorney had at the time of the alleged act of negligence. *Cosgrove,* 774 S.W.2d at 664.

### 1. No Duty

 The summary judgment record demonstrates that Woodruff acted as Kassie's attorney in both the Collin County and Dallas County suits and that she continued to act in that capacity even after Kassie reached the age of majority and after the district court signed the underlying judgments. Ten days after Kassie turned eighteen and after entry of final judgment in both suits, the parties executed the trust agreement. Woodruff obtained and prepared documents relating to the trust property. She obtained a check from her attorney trust account and turned it over to Kassie. She drafted motions for the release of settlement proceeds held in the court registries. The attorney-client relationship between Woodruff and Kassie existed after the court entered the judgments in the underlying suits. Because the existence of an attorney-client relationship gives rise to certain duties owed by the attorney to her client, Woodruff's duties to Kassie did not end when the district court entered the underlying judgments. Accordingly, summary judgment was not proper upon this ground.

 As Kassie's attorney, Woodruff had a duty to protect Kassie's interests. This duty included seeing that the settlement proceeds apportioned to Kassie were properly managed and protected for her benefit.

*See* Tex.Prop.Code Ann. § 142.001 *et seq.* (Vernon 1986). In deciding whether Woodruff acted properly with respect to the settlement proceeds, we must determine whether Woodruff's conduct was that of a reasonably prudent attorney. *Cosgrove,* 774 S.W.2d at 664–65. Woodruff's subjective belief that she acted in good faith is not sufficient. There must be objective evidence that in exercising her professional judgment, Woodruff acted in a reasonably prudent manner. *See Cosgrove,* 774 S.W.2d at 664.

There is no summary judgment evidence about what a reasonably prudent attorney would have done under the circumstances present in this case. Woodruff did not offer any evidence about the standard of care owed to Kassie nor did she offer any evidence that she complied with any applicable standard of care. We conclude that Woodruff did not carry her burden to show that she acted reasonably in handling Kassie's settlement proceeds. Accordingly, summary judgment was improper on Woodruff's grounds of no duty.

### 2. No Liability for Unforeseeable Criminal Acts of Third Parties

 Woodruff also asserts that Kassie's damages resulted from the alleged criminal conduct and wrongful conversion of Stephen and Debbie Byrd. She argues that a criminal act is not an act that a reasonable and prudent person could foresee. Therefore, Woodruff maintains that she cannot be held liable for failing to foresee that Kassie's parents would commit criminal acts.

 Foreseeability is an element of proximate cause. *Nixon,* 690 S.W.2d at 549. Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that her negligent conduct created for others. *Nixon,* 690 S.W.2d at 550. Generally, a third party's criminal conduct is a superseding cause relieving the negligent actor from liability. The actor's negligence will not be excused, however, where the criminal conduct is a foreseeable result of such negligence. *Nixon,* 690 S.W.2d at 550.

We accept Kassie's assertions as true that Debbie Byrd or a third party stole the checks and forged Kassie's name, thereby depriving Kassie of the settlement proceeds. However, there is no summary judgment evidence that these acts were unforeseeable by Woodruff. We conclude that a fact issue exists concerning the foreseeability of the wrongdoer's conduct. Accordingly, summary judgment was not proper on this ground.

## Double Recovery or "One Satisfaction Rule"

Woodruff maintains that Kassie has already recovered the funds apportioned to her from the Humana and Smilack settlements and from the Collin County suit. Woodruff alleges that she is entitled to a credit for the amounts already recovered by Kassie and that Kassie is precluded from seeking recovery of these amounts from her because such would constitute a double recovery by Kassie.

An injured party is entitled to only one satisfaction for her injuries. *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 5 (Tex.1991). This rule, known as the one satisfaction rule, prevents a plaintiff from obtaining more than one recovery for the same injury. *Stewart Title*, 822 S.W.2d at 7. The one satisfaction rule applies in situations where the defendants commit the same act and where defendants commit technically differing acts that result in a single injury. *Stewart Title*, 822 S.W.2d at 7. When applicable, the rule reduces a nonsettling party's liability for damages by allowing a credit against the party's adverse judgment for the amount of any settlement entered into by a co-tortfeasor. *See Stewart Title*, 822 S.W.2d at 2.

However, application of a credit under the one satisfaction rule does not affect a party's liability for its wrongful acts or the assessment of damages against the party. *See Stewart Title*, 822 S.W.2d at 8–9. A finding of damages does not necessarily mean that the plaintiff may recover them. The one satisfaction rule operates to determine a plaintiff's recoverable damages. *See Stewart Title*, 822 S.W.2d at 8–10. Therefore, any credit for settlements made by other alleged tortfeasors must be applied after the trier of fact determines a party's liability. *Cf. Stewart Title*, 822 S.W.2d at 9. Otherwise, a nonsettling tortfeasor would unjustly reap a windfall from the settlements made by other settling tortfeasors. *See Stewart Title*, 822 S.W.2d at 9.

### 1. Smilack Settlement

Woodruff alleges that Kassie received $4700, representing the monies due her from the Smilack settlement. The summary judgment evidence shows that Kassie was awarded $4000 in the Smilack settlement. The district court ordered the $4000 paid into the court's registry and invested in an interest-bearing account until Kassie reached majority age. It is undisputed that the funds were never deposited in the court's registry but were instead deposited in the Beggs & Woodruff trust account.

Kassie's attorney's affidavit, filed in response to Woodruff's motion for summary judgment, reveals that his law firm received a check in the amount of $4000 representing the principal amount of the Smilack settlement and another check in the amount of $700 representing interest on the $4000. He stated that these funds were then disbursed to Kassie and his law firm. Also in her discovery responses, Kassie admits that she has received, as part of the Smilack settlement, $4000 from Woodruff and $700 from another party.

The summary judgment evidence shows that Kassie received the principal amount of the Smilack settlement together with $700 interest. Kassie may not recover these same damages from Woodruff because such an award would result in a double recovery. *See Stewart Title*, 822 S.W.2d at 8. Accordingly, we hold that Woodruff is entitled to a $4700 credit against any adverse judgment that might be entered against her as a result of Kassie's claims arising out of the Smilack settlement.

### 2. Collin County and Humana Settlements

Woodruff also alleges that Kassie received $30,000 from NCNB in settlement

of her suit against NCNB for wrongfully negotiating the $19,000 Humana settlement check and the $15,654.72 Collin County check. She maintains that Kassie assigned all her rights and interest in the Humana and Collin County checks to NCNB and that she is precluded from seeking double recovery of these checks. Woodruff further asserts that Kassie received a check for $6000 from Allstate Life Insurance Company, representing a payment due Kassie from the Collin County judgment, and that Kassie is also precluded from seeking double recovery of this amount.

The record does not contain a statement of facts for the prove-up hearing, a copy of the final judgment, or a copy of the settlement agreement reached in the Collin County suit. Kassie asserts in her second amended petition that the judgment provides for a $6000 payment directly to her at the age of sixteen and for $12,500 to be placed in the registry of the court and invested until she reaches majority. She further asserts· in her petition that, when she reached majority, the Collin County district clerk drew a check for $15,-654.72, representing the judgment proceeds that were deposited in the court's registry. The record additionally shows that Kassie was apportioned $19,000 from the Humana settlement which was placed in the Dallas County court registry and released after she reached majority.

Kassie claims, however, that she never received any of these payments because the checks were stolen and her name forged. Kassie sued NCNB for its payment of funds drawn on the $19,000 check received from the Humana settlement and the $15,654.72 Collin County check. Kassie settled her claim with NCNB for $30,000.

In this case, Kassie claims that she did not receive the Humana and Collin County settlement checks because of Woodruff's allegedly negligent acts. In the NCNB suit, Kassie asserted that her failure to receive these same proceeds was due to NCNB's negligent negotiation of the checks. These acts constitute a single indivisible harm to Kassie. Woodruff's conduct gave rise to the same damages that Kassie sought from NCNB, the monies due her from the Humana and Collin

County settlements. We conclude that the one satisfaction rule applies. Accordingly, we hold that Woodruff is entitled to a $30,000 credit against any adverse judgment that might be entered against her as a result of Kassie's claims arising out of the Humana and Collin County settlement checks that were deposited in the Dallas County and Collin County court registries.

 The record contains no summary judgment evidence that Kassie received the $6000 payment from the Collin County suit. Woodruff's contention that Kassie received such payment from Allstate is only an assertion in her motion for summary judgment. Woodruff's pleadings and motion for summary judgment are not summary judgment evidence. *See Brooks v. Sherry Lane Nat'l Bank,* 788 S.W.2d 874, 878 (Tex.App.—Dallas 1990, no writ). Because Woodruff did not present any summary judgment evidence to support her ground of double recovery with respect to the $6000 payment, Woodruff is not entitled to a credit on this amount.

### Kassie's Remaining Claims

In her second amended petition, Kassie complains that Woodruff paid to herself or third parties the sum of $170,383.78 in settlement proceeds made on her behalf without court authorization. In connection with the trust agreement, Kassie asserts that Woodruff failed to ensure compliance with the provisions of Chapter 142 of the Texas Property Code in creating the trust. She further alleges that Woodruff: (1) failed to advise or improperly advised her on the safety of·trust funds, (2) allowed an irrevocable trust document to be drafted when by its terms the trust is revocable, (3) did not advise her that the document was in fact revocable, and (4) either advised her to enter into an invalid trust agreement or failed to advise her that the trust agreement was invalid. Finally, Kassie asserts that Woodruff did not provide for the payment of court costs to her.

Woodruff does not address any of these claims in her motion for summary judgment. Because Woodruff did not move for summary judgment as to these claims, the district

court erred in granting Woodruff summary judgment on these claims.

We sustain in part and overrule in part point of error two.

## GUARDIAN AD LITEM

In point of error one, Kassie contends that the district court erred in granting Downs's motion for summary judgment. Downs moved for summary judgment on the following grounds: (1) as guardian ad litem, he was immune from liability; (2) no attorney-client relationship existed between Kassie and himself; (3) as guardian ad litem, he had no duties after the district court signed its final judgment or after Kassie reached majority age; (4) the Law Firm of Spears, Busch & Downs was not a proper party to the lawsuit; (5) Kassie is estopped from asserting that the settlements were unreasonable; (6) Kassie's lawsuit is an improper collateral attack on the judgment; (7) Kassie's claims are barred by collateral estoppel; and (8) Kassie had already recovered the amounts for which she brought suit against Downs.

### Fiduciary Duty of Guardian Ad Litem

■ No Texas court has considered the issue before us:[4] the liability of a guardian ad litem appointed pursuant to rule 173 of the rules of civil procedure within the context of a minor settlement hearing involving the apportionment of settlement proceeds. To answer this question, we must determine the nature of the relationships among a guardian ad litem, the minor, and the court.

■ A minor does not have the legal capacity to employ an attorney or anyone else to watch over her interests. Rule 44 of the rules of civil procedure authorizes appearance by a next friend.[5] The next friend is present in a representative capacity only, and the minor remains the real party in interest. *Gracia v. RC Cola—7–UP Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984) (citing *Wygal v. Myers*, 76 Tex. 598, 13 S.W. 567 (1890)). Although the minor is the real plaintiff, the bringing of a suit by next friend does not change the minor's status. The minor is *non sui juris* and remains altogether under the court's protection. *M.K.T. Ry. v. Pluto*, 138 Tex. 1, 156 S.W.2d 265, 268 (1941).

■ If an adverse interest arises between the real plaintiff and next friend, the next friend is no longer competent to represent the minor. *See Pluto*, 156 S.W.2d at 268; *Gallegos v. Clegg*, 417 S.W.2d 347, 352 (Tex. Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.). Because the minor's legal disabilities have not changed, the district court must appoint another representative of the minor's interests. *See* TEX.R.CIV.P. 173.

Rule 173 provides:

When a minor ... is a party to a suit either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor ... the

---

4. In *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66 (1920), the supreme court stated:

> In actions against or concerning minors or their property in which a guardian ad litem is appointed to represent them, he does not become a party to the suit. His relationship to the controversy is only that of an officer of the court, imposed with the duty of protecting the interest of the minors, but subject to no liability, in either his individual or official capacity, with respect to what the suit involves, because of its result.

220 S.W. at 71. Addressing whether a guardian ad litem could be held personally responsible for court costs, the supreme court explained that a guardian ad litem is not a party in litigation and cannot be held responsible to pay a final judgment or court costs. The opinion did not address the issue of whether a guardian ad litem appointed under rule 173 can be held liable for

damages resulting from acts of negligence in performing his duty.

5. Rule 44 states:

> Minors, lunatics, idiots, or persons non compos mentis who have no legal guardian may sue and be represented by "next friend" under the following rules:
> (1) Such next friend shall have the same rights concerning such suits as guardians have, but shall give security for costs, or affidavits in lieu thereof, when required.
> (2) Such next friend or his attorney of record may with the approval of the court compromise suits and agree to judgments, and such judgments, agreements and compromises, when approved by the court, shall be forever binding and conclusive upon the party plaintiff in such suit.

TEX.R.CIV P. 44.

court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as part of the costs.

TEX.R.CIV.P. 173. Rule 173 provides for a contingency not covered by rule 44: the appearance, after suit is filed, of a probable conflict between the real plaintiff and next friend. *Phillips Petroleum Co. v. Welch,* 702 S.W.2d 672, 674 (Tex.App.—Houston [14 Dist.] 1985, writ ref'd n.r.e.); *see King v. Payne,* 156 Tex. 105, 292 S.W.2d 331, 335 (1956).

Rule 173 authorizes appointment of a guardian ad litem only when it appears that the next friend has an interest adverse to the person represented. *Davenport v. Garcia,* 834 S.W.2d 4, 24 (Tex.1992); *Newman v. King,* 433 S.W.2d 420, 421–22 (Tex. 1968). If the court determines that a conflict exists, the court must appoint a guardian ad litem. *Jaynes v. Lee,* 306 S.W.2d 182, 185 (Tex.Civ.App.—Texarkana 1957, no writ). Once appointed, the guardian ad litem displaces the next friend and becomes the personal representative of the individual subject to a legal disability.[6] *Newman,* 433 S.W.2d at 421; *Kennedy v. Missouri Pac. R.R.,* 778 S.W.2d 552, 555 (Tex.App.—Beaumont 1989, writ denied).

A conflict of interest between the minor and next friend often arises in a settlement situation where the parties vie for different portions of a fixed settlement amount. *See Pluto,* 156 S.W.2d at 268; *Gallegos,* 417 S.W.2d at 352–53. Consequently, the appointment of a guardian ad litem and a settlement hearing are often necessary in compromising any suit involving a minor. TEX. R.CIV.P. 44, 173; *see Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex.1990) (Hecht, J., dissenting) (citing *Urbish v. 127th Judicial Dist. Court,* 708 S.W.2d 429, 431 (Tex.1986); *Newman,* 433 S.W.2d at 421).

In most cases, a settlement hearing is not necessary; the agreement of the parties to a suit is a sufficient basis for rendition of judgment. *Terrazas v. Ramirez,* 829 S.W.2d 712, 719 (Tex.1991) (citing *Pope v. Powers,* 132 Tex. 80, 120 S.W.2d 432, 436 (1938)). With minors, however, even if the parties and court-appointed ad litem agree to the settlement, a judgment ratifying the compromise cannot be rendered without a hearing and evidence that the settlement serves the minor's best interest. *See* TEX.R.CIV.P. 44.

Absent a friendly suit, a judgment entered in favor of a minor represented by a next friend is not binding on the minor, and she can sue to have it set aside on the basis of inadequate representation of her interests. *See* TEX.R.CIV.P. 44; *Howell v. Fifth Court of Appeals,* 689 S.W.2d 396, 398 (Tex.1985) (Gonzalez, J., dissenting) (citing *Pluto,* 156 S.W.2d at 268; *Gallegos,* 417 S.W.2d at 352); *Transport Ins. Co. v. Faircloth,* 861 S.W.2d 926, 935 (Tex.App.—Beaumont 1993, writ granted); *see also Benavides v. Garcia,* 283 S.W. 611, 613 (Tex.Civ.App.—San Antonio 1926) (judgment subject to collateral attack for charge of misconduct against next friend), *aff'd,* 290 S.W. 739 (Tex. Comm'n App.1927, holding approved). The friendly suit allows the district court to adjudicate the legal issues involved, approve the settlement, and enter a final judgment. *See Transport Ins. Co.,* 861 S.W.2d at 935. The settlement agreement, once approved by the court, becomes forever binding and conclusive on the minor. TEX.R.CIV.P. 44.

Case law limits the ad litem's powers to matters connected with the suit in which he is appointed, and the ad litem's powers end when a judgment is entered.[7] *Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980); *Pleasant Hills Children's Home of the Assemblies of God, Inc. v. Nida,* 596 S.W.2d 947, 951 (Tex.Civ.App.—Fort Worth 1980, no

---

6. Because the guardian ad litem displaces the next friend, the trial court should exercise great caution in appointing an ad litem. The appointment of a guardian ad litem is appropriate *only* when a conflict of interest exists between the minor and next friend. *Davenport,* 834 S.W.2d at 24.

7. This is true except in narrow circumstances. *See Brownsville–Valley Regional Medical Center v. Gamez,* 871 S.W.2d 781, 783 (Tex.App.—Corpus Christi 1994, writ requested); *see also McGough v. First Court of Appeals,* 842 S.W.2d 637, 640 (Tex.1992).

writ) (citing TEX.JUR.2d *Infants* § 71 (1962)). The guardian ad litem participates in the case to the extent necessary to adequately protect the minor's interests. *See, e.g., Roark v. Mother Frances Hosp.*, 862 S.W.2d 643, 647 (Tex.App.—Tyler 1993, writ denied); *Phillips Petroleum,* 702 S.W.2d at 674; *Pleasant Hills,* 596 S.W.2d at 951; *Coastal States Gas Producing Co. v. Locker,* 436 S.W.2d 592, 596 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ). Accordingly, the guardian ad litem has considerable latitude in determining what depositions, hearings, conferences, or other activities are necessary to that effort. *Phillips Petroleum,* 702 S.W.2d at 675.

■ The guardian ad litem participates in such proceedings—not as an attorney for the minor—but as the personal representative of the minor. *Dawson v. Garcia,* 666 S.W.2d 254, 265 (Tex.App.—Dallas 1984, no writ); *Pleasant Hills,* 596 S.W.2d at 951. While Texas case law does not specifically recognize a fiduciary relationship between a minor and guardian ad litem appointed under rule 173 in a friendly suit,[8] the law recognizes the fiduciary duty of a guardian of a ward or the personal representative of an estate. *See* TEX.PROB.CODE ANN. §§ 3(aa), 110(g), 230(a) (Vernon 1980); *Bailey v. Cherokee County Appraisal Dist.,* 862 S.W.2d 581, 590 (Tex. 1993); *Gulf Ins. Co. v. Blair,* 589 S.W.2d 786, 787 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

■ A guardian is charged with the duty to properly and prudently manage and control the ward and her estate. TEX.PROB. CODE ANN. § 110(g) (Vernon 1980). Further, a personal representative has a fiduciary duty to maintain and preserve the estate's assets. *Blair,* 589 S.W.2d at 787. Although limited to matters connected with the settling suit, the guardian ad litem acts as both a personal representative and a guardian to the minor.

■ The district court's appointment of a guardian ad litem imposes a formal relationship of confidence between the minor and the guardian ad litem. *Cf. Texas Bank & Trust Co. v. Moore,* 595 S.W.2d 502, 507 (Tex.1980). Further, the minor is justified in believing that a special confidence exists and in trusting that the ad litem will endorse her interests. *Cf. Thomson v. Norton,* 604 S.W.2d 473, 476 (Tex.Civ.App.—Dallas 1980, no writ). As a personal representative, the ad litem is under a duty to evaluate the circumstances surrounding the suit and make a recommendation to the district court on the minor's behalf. *Cf. Fisher v. Roper,* 727 S.W.2d 78, 81 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.). Most importantly, the friendly suit renders the settlement agreement forever binding and conclusive on the minor. TEX.R.CIV.P. 44. The court's judgment is a final resolution of the minor's interests—*as represented by a guardian ad litem.*[9]

Accordingly, a guardian ad litem's court-appointed role to act as the representative of the minor's interests is sufficient to establish a fiduciary relationship between the minor and the guardian ad litem. *See Moore,* 595 S.W.2d at 508; *cf.* TEX.PROB.CODE ANN. §§ 3(aa), 110(g), 230(a) (Vernon 1980); *Bailey,* 862 S.W.2d at 590; *Gulf Ins. Co.,* 589 S.W.2d at 787. Consequently, we hold that a guardian ad litem appointed under rule 173 within the context of a friendly suit is a fiduciary as a matter of law.

■ As a fiduciary, the guardian ad litem shall: (i) use the skill and prudence that an ordinary, capable, and careful person would use in the conduct of his own affairs,

---

8. Interpreting article 2276 of the revised civil statutes, several courts of appeals have held that when representing a minor in the fiduciary capacity as a guardian ad litem, the ad litem is exempt from filing an appeal bond. *See generally In the Matter of A.M.,* 664 S.W.2d 414, 415 (Tex.App.—Corpus Christi 1983, no writ). The article sets forth that "executors, administrators, and guardians appointed by the Courts of this State shall not be required to give bond on any appeal or writ of error taken by them in their *fiduciary capacity.*" TEX.REV.CIV.STAT.ANN. art. 2276 (Vernon 1976) (emphasis added).

9. The ad litem's appointment may have significant consequences for the minor. *See Roberts v. Parrish,* 567 S.W.2d 581, 584–85 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.) (court accepts guardian ad litem's recommendation to settle infant's claim over counsel's and parent's wishes to the contrary).

(ii) use diligence and discretion in representing the minor's interests, and (iii) be loyal to his fiduciary. *Cf. InterFirst Bank Dallas, N.A. v. Risser,* 739 S.W.2d 882, 888 (Tex. App.—Texarkana 1987, no writ) (duty of trustee to manage trust property). The fiduciary duty is one of integrity, loyalty, and the utmost good faith. *Coble Wall Trust Co. v. Palmer,* 859 S.W.2d 475, 481–82 (Tex.App.—San Antonio 1993, writ denied). The guardian ad litem appointed under rule 173 in a settlement hearing is bound to serve the interests of his principal, placing the interests of the minor before his own. *See Crim Truck & Tractor Co. v. Navistar Int'l Transp.,* 823 S.W.2d 591, 592 (Tex.1992).

■ After a thorough investigation, the guardian ad litem has a duty to evaluate: (i) the damages suffered by the minor, (ii) the adequacy of the settlement, (iii) the proposed apportionment of settlement proceeds among the interested parties, (iv) the proposed manner of disbursement of the settlement proceeds, and (v) the amount of attorneys' fees charged by the minor's attorney. *Cf. Transport Ins. Co.,* 861 S.W.2d at 935. Based on the guardian ad litem's evaluation, the ad litem shall make a recommendation to the district court on the minor's behalf. Consequently, a guardian ad litem has a legal obligation to be careful and diligent in his representation of the minor's interests.

### Judicial Immunity

■ Downs contends, nevertheless, that he is immune from civil liability because he performed his guardian ad litem duties as an arm of the court. Directing our attention to the ad litem's vital role as a personal representative, Kassie contends that the doctrine of derived judicial immunity should not protect a guardian ad litem from liability for a breach of his duties to the minor.

■ Judges are immune from tort liability for acts performed or not performed in the course of judicial proceedings over which they have jurisdiction. *Turner v. Pruitt,* 161 Tex. 532, 342 S.W.2d 422, 423 (1961). When judges delegate their authority or appoint persons to perform services for the court, their judicial immunity may follow that delegation or appointment. In Texas, judicial immunity applies to officers of the court who are integral parts of the judicial process, such as a prosecutor performing typical prosecutorial functions, court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees.[10] The supreme court has held that as "arms of the court," bankruptcy trustees are immune from tort liability for actions grounded in their conduct as trustees. *See Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992).

■ In the context of a friendly suit, the judge is absolutely immune from liability for any unfortunate decision made concerning the settling of a minor's suit. *McGough v. First Court of Appeals,* 842 S.W.2d 637, 640 (Tex.1992). However, absolute immunity is "extended no further than its justification ... warrant[s]." *Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982). The key consideration in determining whether an officer is entitled to judicial immunity is whether the officer's conduct is a normal function of the delegating or appointing judge. *See Spencer v. City of Seagoville,* 700 S.W.2d 953, 958–59 (Tex. App.—Dallas 1985, no writ). Whether an act is judicial in nature is determined by the act's character and not by the character of the agent performing it. *See Ex parte Virginia,* 100 U.S. 339, 25 L.Ed. 676 (1880).

Downs would have this Court hold that, by conducting a nonadversarial hearing considering the evidence only in light of the best

---

10. *See Russell v. Millsap,* 781 F.2d 381, 383 (5th Cir.1985), *cert. denied,* 479 U.S. 826, 107 S.Ct. 103, 93 L.Ed.2d 53 (1986); *Tarter v. Hury,* 646 F.2d 1010, 1012 (5th Cir. Unit A June 1981); *Keeble v. Cisneros,* 664 F.Supp. 1076, 1078 (S.D.Tex.1987); *Clements v. Barnes,* 834 S.W.2d 45, 46 (Tex.1992) (citing *Boullion v. McClanahan,* 639 F.2d 213, 214 (5th Cir. Unit A Mar. 1981) (per curiam)); *Kimmell v. Leoffler,* 791 S.W.2d 648, 651 (Tex.App.—San Antonio 1990,

writ denied) (citing *Imbler v. Pachtman,* 424 U.S. 409, 421–31, 96 S.Ct. 984, 990–96, 47 L.Ed.2d 128 (1976)); *Summertree Venture III v. Federal Sav. & Loan Ins. Corp.,* 742 S.W.2d 446, 454 (Tex.App.—Houston [14th Dist.] 1987, writ denied); *Miller v. Curry,* 625 S.W.2d 84, 86–87 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982).

interest of the minor, the district court becomes the representative of the minor's interests and the appointment of an ad litem is a delegation of that duty.

However, the purpose of the friendly suit is to preserve the finality of judgments, not to make the judiciary of Texas an insurer of favorable compromise agreements. *See McGough*, 842 S.W.2d at 640. The court appoints a personal representative for the minor precisely because the court cannot represent the minor's interests. The purpose of the guardian ad litem is to overcome the minor's legal incapacity. The guardian ad litem conducts an independent investigation, evaluates the benefits of settling, and determines the best interests of the minor to communicate, *as the minor's personal representative*, his recommendations to the court. As a fiduciary, the guardian ad litem stands in the place of, and represents the interests of, the minor.[11]

■ The guardian ad litem is not an agent of the court and has no delegated authority to act in the name of the court. A distinguishing feature of judicial officers granted absolute immunity, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees, is their accountability to the appointing court. Such officers act at the discretion of the court. The guardian ad litem, on the other hand, acts independently of the district court. Absent removing the guardian ad litem, the court has no discretion to control the ad litem's actions.[12] Because the guardian ad litem is not acting as an agent of the court, the policy rationale for extending absolute immunity to the guardian ad litem is not present.[13]

Although the possibility of claims based on breach of a guardian ad litem's duties may discourage potential ad litems from participating in the guardian ad litem program, a minor's right to sue must be considered in light of countervailing concerns, including the utility of the friendly suit and the guardian ad litem program. Texas law holds that the guardian ad litem displaces the next friend as the personal representative of the minor's interests. As a fiduciary, the ad litem is empowered to make decisions for, and act on behalf of, the minor. *See Newman*, 433 S.W.2d at 421; *Dawson*, 666 S.W.2d at 265; *Pleasant Hills*, 596 S.W.2d at 951.

If we cloak the guardian ad litem with judicial immunity, the minor has no recourse for an inadequate representation of her interests. The system's attempt to maintain the finality of judgments and protect the minor from the next friend's adverse interests would deny the minor any protection against acts of incompetence or bad faith committed by her guardian ad litem. Consequently, we conclude that policy requires this Court to hold the guardian ad litem accountable to the minor.

Policy requires that we do not extend the doctrine of derived judicial immunity to a guardian ad litem appointed under rule 173 within the context of a friendly suit. We hold that the guardian ad litem, who has displaced the next friend, can be liable in a civil action for damages resulting from a breach of his duties as a personal representative for the minor.

■ Here, Downs contends that the summary judgment evidence shows that he was

11. Some restrictions apply: the guardian ad litem may not bind the minor by adverse admissions or waive any substantial right of the minor. *See Reasoner v. State*, 463 S.W.2d 55, 59 (Tex.Civ. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).

12. *See McGough*, 842 S.W.2d at 640 (court cannot force guardian ad litem to file an application for creation of trust); *Davenport*, 834 S.W.2d at 24 (court can substitute guardian ad litem only if conflict of interest exists); *see also Davenport*, 834 S.W.2d at 44 (Hecht, J., concurring) (best interest of minor is sufficient cause to replace guardian ad litem).

13. In the seminal case of *Floyd v. Baker,* decided in 1607, Lord Coke established judicial immunity because it (i) ensures the finality of judgments; (ii) protects judicial independence; (iii) avoids continual attacks upon judges who may be sincere in their conduct; and (iv) protects the system of justice from falling into disrepute. 77 Eng.Rep. 1305 (Star Chamber 1607). Today, it is generally recognized that judicial independence is the most important purpose of judicial immunity. *See* Jeffrey M. Shaman, *Judicial Immunity From Civil and Criminal Liability*, 27 San Diego L.Rev. 1 (1990).

appointed only to aid the court in its judicial function and not to act as Kassie's representative. The 134th District court appointed Jay Downs as Kassie's guardian ad litem with respect to the Dallas County suit, which resulted in three court-approved settlements.

At the prove-up for the Smilack and Humana settlements, Downs testified that after reviewing the medical records and talking with Kassie and her parents, he believed that Kassie had suffered a considerable amount of damages but proving proximate cause would be very difficult. Downs testified that, in light of the heavy burden to show proximate cause, the settlement was entirely fair and reasonable and in the best interests of Kassie and her parents. Downs requested the court to approve the settlements.

With respect to the Smilack settlement, the district court's partial judgment recites:

> The Court, having reviewed the pleadings, is of the opinion that there is a sharp conflict of interest between Stephen Byrd and his minor daughter, Kassie Renee Byrd.
>
> It is therefore, ordered that Stephen Byrd be removed as Next Friend for said minor and that Jay R. Downs, an attorney at law in Dallas County, Texas, be and is hereby appointed Guardian Ad Litem to represent said minor herein; and
>
> The Guardian Ad Litem, having investigated the facts in connection with said suit, and the nature and extent of the damages and injuries sustained by the minor, Kassie Renee Byrd, did, together with the Plaintiffs, announce in open court the opinion that said offer of settlement was fair, just and reasonable and acceptable[.]

With respect to the Humana settlement, the district entered an interlocutory judgment that provides:

> It appearing to the Court that there is a conflict between the adult Plaintiff on the one hand and the interests of the minor Plaintiff, Kassie Renee Byrd, for whom the adult Plaintiff also brings suit as Next Friend, as to the issue of apportionment of the recovery herein:
>
> It is therefore, ordered, adjudged and decreed by the Court that Jay Downs, a

duly qualified person, be, and he is hereby, appointed Guardian Ad Litem to represent the interest of said minor Plaintiff, and that he be awarded the sum of $750.00 for his services, which amount is to be paid by Humana of Texas, Inc., d/b/a Humana Hospital–Medical City Dallas; and

> Said Guardian Ad Litem having asked for and received reasonable time to acquaint himself with the facts and the law herein, and after study and deliberation, reported to the Court that, in his opinion, the tentative agreement was fair, just, and reasonable, and that the apportionment hereinafter ordered by the Court was fair, just, and reasonable and for the best interests of the minor Plaintiff and should be approved[.]

At the prove-up for the Rosen & Glidden settlement, the parties entered into evidence a compromise agreement that provides:

> Jay Downs, duly appointed Guardian Ad Litem for Minor Plaintiff, Kassie Renee Byrd, warrants that he has read this agreement and fully understands it to be a compromise and settlement of all claims, known or unknown, present or future, that Kassie Renee Byrd has or may have against the party or parties released, arising of the matters described.

Downs questioned Kassie's father about naming him as trustee over Kassie's settlement funds. Downs also questioned Kassie about her understanding and satisfaction with the settlement. Downs participated in a day-long settlement conference and reviewed the liability and damage facts involved. Subsequently, the district court entered a final judgment that provides:

> [T]he Court also specifically approves the acts and conduct of the Guardian Ad Litem in compromising and settling this suit and the Court hereby finds that said compromise settlement agreement is for the best interests of the Minor Plaintiff, Kassie Renee Byrd.

. . . . .

> The Court hereby further finds that Jay Downs is entitled to and should be paid a fee of $3,500.00, for his services as Guardian Ad Litem for the Minor Plaintiff, Kas-

sie Renee Byrd, a Minor, which fee shall be taxed against Defendants.

In his affidavit, Downs states that "all of the functions which [he] performed in that lawsuit were performed to aid and inform the district court and in [his] capacity as a guardian ad litem." Kassie presented no summary judgment evidence regarding Downs's appointment.

Contrary to Downs's assertion, the summary judgment evidence shows that the district court appointed Downs to act as Kassie's personal representative. The court's judgments recite that a sharp conflict existed between Kassie and her Next Friend, thereby requiring the appointment of a guardian ad litem. The evidence shows that Downs, as guardian ad litem, replaced Stephen Byrd as Next Friend. The evidence shows that Downs actively participated in a settlement conference, reviewed medical records, met with Kassie and her parents, and examined legal issues regarding proximate cause, damages, and the naming of a trustee.

Consequently, we hold that the evidence conclusively establishes that (1) the parties filed a friendly suit under rule 44 of the rules of civil procedure; (2) the district court appointed Downs as Kassie's guardian ad litem under rule 173 of the rules of civil procedure; and (3) Downs displaced Stephen Byrd as Kassie's personal representative. We conclude that the court charged Downs with the responsibility to participate in the case to the extent necessary to adequately protect Kassie's interests.

Accordingly, we hold that Downs is not immune from liability for damages arising from a breach of his duties in acting as Kassie's guardian ad litem. The doctrine of derived judicial immunity was not a proper ground for summary judgment.

### No Attorney–Client Relationship

■ Downs next contends that no attorney-client relationship existed between Kassie and himself; therefore, he cannot be held liable for attorney malpractice. We agree. The attorney-client relationship is a contractual relationship, whereby an attorney agrees to render professional services for the client.

*See Perez*, 822 S.W.2d at 265. Downs did not enter into a contractual relationship with Kassie to perform legal services on her behalf. *See Dawson*, 666 S.W.2d at 265. Further, the district court did not appoint Downs to act as Kassie's legal representative. Consequently, Downs cannot be held liable for attorney malpractice with respect to any of Kassie's claims. *See First Mun. Leasing v. Blankenship*, 648 S.W.2d 410, 413 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Summary judgment on this ground was improper.

### Law Firm Not a Proper Party

■ Downs contends that the Law Firm of Spear, Busch & Downs was not a proper party to the lawsuit. Specifically, Downs argues that all of his actions as Kassie's guardian ad litem occurred prior to the incorporation of his law firm. The summary judgment evidence indicates that Spear, Busch & Downs was incorporated on December 28, 1989 and opened for business on January 2, 1990. Down's actions during settlement negotiations and prove-up hearings took place prior to December 28, 1989. However, the final judgment was not entered until January 24, 1990. The guardian ad litem's powers and duties do not end until the judgment is entered. *See Durham*, 600 S.W.2d at 761; *Pleasant Hills*, 596 S.W.2d at 951. Consequently, summary judgment on this ground was improper.

### No Duty

Downs next contends that a guardian ad litem owes no duties after the minor reaches majority age or after the judgment is signed.

■ Typically, the guardian ad litem's duties and powers end when a final judgment is entered. Generally, when the judgment becomes final, the minor is no longer a party to the action; therefore, the guardian ad litem no longer has authority to act for the minor. *Durham*, 600 S.W.2d at 761; *Pleasant Hills*, 596 S.W.2d at 951. However, there are exceptions. A guardian ad litem is useful in all stages of a case, not just the trial. *See McGough*, 842 S.W.2d at 640. And, the district court may impose duties on a guardian ad litem extending after the judgment becomes final. *Cf. Brownsville–Valley*

*Regional Medical Ctr. v. Gamez*, 871 S.W.2d 781, 783 (Tex.App.—Corpus Christi 1994, writ requested) (attorney ad litem shall oversee trust and advise minor regarding rights in it).

 Here, the record contains no summary judgment evidence showing that the district court appointed Downs to act as Kassie's guardian ad litem after the judgment became final. The final judgment reflects that Downs performed his duties and received payment. Further, Kassie made no allegation that the district court appointed Downs to perform post-judgment duties. Consequently, we conclude that Downs cannot be held liable for claims based on any action or nonaction occurring after execution of the final judgment.

Concerning Kassie's claims alleging failure to deliver settlement proceeds to her upon reaching majority, the summary judgment evidence shows that the settlement funds from the Smilack, Humana, and Rosen & Glidden settlements were disbursed to Kassie after entry of the final judgment. The trust agreement also states that Kassie executed the agreement after judgment. Therefore, the district court properly granted Downs summary judgment on Kassie's claims concerning delivery of settlement proceeds, creation of the trust, and execution of the trust instrument.

 Regarding Kassie's claim that Downs did not ensure that the Humana settlement proceeds were properly invested, the summary judgment evidence shows that the settlement funds were deposited in the Dallas County court's registry in accordance with the judgment; however, the district court's judgment did not order the Humana proceeds deposited in an interest-bearing account. Subsequently, when the funds were disbursed, there was only the principal amount and no interest.

As Kassie's guardian ad litem, Downs had a duty to diligently represent Kassie's interests. Downs had the authority to request that the deposited funds be placed in an interest-bearing account by making an application to the court. *See* TEX.PROP.CODE ANN. § 142.001(a) (Vernon 1986); *McGough*, 842

S.W.2d at 640. Downs offered no summary judgment evidence concerning whether he used the diligence and discretion that a capable and careful person would use in the conduct of his own affairs when representing Kassie's interests in the settlement funds. We, therefore, conclude that the question of whether Downs breached a duty in not requesting that the court's judgment order the Humana proceeds deposited in an interest-bearing account before being disbursed to Kassie when she reached majority age is a fact issue for the trier of fact. Accordingly, summary judgment was improper on Kassie's claim based on Downs's failure to invest the Humana settlement proceeds.

### Estoppel & Improper Collateral Attack

Downs further alleges that Kassie is estopped from asserting that the settlements were unreasonable and that Kassie's lawsuit is an improper collateral attack on a final judgment. As we have already discussed, Kassie does not challenge the fairness and reasonableness of the underlying settlements themselves nor does she attack the validity of the underlying judgments entered in the Dallas County suit. Downs cannot obtain summary judgment on the grounds of estoppel or improper collateral attack.

### Collateral Estoppel

 Downs contends that the court's final judgment specifically approves his conduct in acting as Kassie's guardian ad litem. The final judgment recites:

> The Court also specifically approves the acts and conduct of the Guardian Ad Litem in compromising and settling this suit and the Court hereby finds that said compromise settlement agreement is for the best interests of the Minor Plaintiff, Kassie Renee Byrd.

From this recitation, Downs argues that his performance was litigated for purposes of collateral estoppel. Downs urges that the guardian ad litem's recommendation to approve the settlement agreement is essential to the court's judgment because the court would enter judgment for the minor only if it believed that the ad litem had properly fulfilled its duties.

Downs's representation of Kassie's interests was not litigated for purposes of collateral estoppel because Kassie and Downs were not adversaries in the friendly suit. *See Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). Further, a determination of adequate performance by Downs is not necessarily essential to the court's decision to approve the settlement. *Cf. Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex.1985). Collateral estoppel does not preclude Kassie's claims.

### Double Recovery

We have already decided that the summary judgment evidence shows that Kassie received the principal amount of the Smilack settlement together with $700 interest. Therefore, we hold that Downs is entitled to a $4700 credit against any adverse judgment that might be entered against him as a result of Kassie's claims arising out of the Smilack settlement.

Downs also claims that he is entitled to a $19,000 credit for the Humana settlement as a result of Kassie's recovery of this amount from NCNB. However, the summary judgment evidence does not conclusively establish that Kassie received $19,000 from NCNB in connection with the negligent negotiation of the Humana settlement check.

Kassie sued NCNB for its payment of funds drawn on the $19,000 Humana check and the $15,654.72 Collin County check. Kassie settled her claim with NCNB for $30,000. Kassie's attorney's affidavit states that out of the $30,000 received, only $16,447.97 is applicable to the Humana settlement. Downs did not controvert this summary judgment evidence. Accordingly, we hold that Downs is entitled to a $16,447.97 credit against any adverse judgment that might be entered against him as a result of Kassie's claims arising out of the Humana settlement proceeds.

### Kassie's Remaining Claims

In her second amended petition, Kassie claims that Downs was negligent in (1) drafting and approving the Rosen & Glidden judgment without providing for sufficient certainty of terms to allow the parties to ascertain their rights and obligations under the judgment, (2) allowing the $4000 Smilack settlement proceeds to be deposited in Woodruff's attorney trust account rather than in the court's registry, and (3) failing to provide for payment of court costs to Kassie. Kassie also complains that Downs allowed the payment of settlement proceeds in the amount of $170,383.78 made on her behalf to be paid to third parties without court authorization. The summary judgment evidence does not conclusively establish that these allegations took place after entry of the final judgment. Nor does Downs address these claims in his motion for summary judgment. Because Downs did not move for summary judgment on these claims, the district court erred in granting Downs summary judgment on the remaining claims.

We sustain in part and overrule in part point of error one.

### CONCLUSION

We conclude that Woodruff and Downs established that they are entitled to summary judgment on Kassie's claim concerning the final judgment's apportionment of proceeds to Kassie from the Rosen & Glidden settlement. Woodruff and Downs also established that they are entitled to summary judgment for a $4700 credit against any damages that might be assessed against them as a result of Kassie's claims arising out of the Smilack settlement. Woodruff established that she is entitled to a credit of $30,000 against any damages for which she may be found liable as a result of Kassie's claims arising from the Humana and Collin County suit settlement checks that were deposited in the Dallas County and Collin County court registries. Downs established that he is entitled to summary judgment for a $16,447.97 credit against any damages that might be assessed against him as a result of Kassie's claims arising out of the Humana settlement.

We conclude that Downs owed no duty to Kassie once the district court entered its final judgment; therefore, the court properly granted Downs summary judgment on Kassie's claims as to the creation and execution

of the trust and as to the disbursement of the Smilack, Humana, and Rosen & Glidden settlement proceeds to Kassie.

We conclude that Woodruff and Downs did not establish their right to summary judgment on Kassie's remaining claims. Accordingly, we reverse the summary judgment granted to Katherine Woodruff, the Law Firm of Beggs & Woodruff, Jay Downs, and the Law Firm of Spears, Busch & Downs on all other claims. We remand these claims to the district court for further proceedings.