99-00204 Borden v Martinez concurring opinion.wpd



CONCURRING OPINION

No. 04-99-00204-CV



BORDEN, INC.,


Appellant



v.



Sergio MARTINEZ, Alvino Morales, and Arnulfo Gonzalez, Jr.,


Appellees



From the 49th Judicial District Court, Webb County, Texas


Trial Court No. C-96-1131-D1


Honorable Manuel R. Flores, Judge Presiding



Opinion by: Catherine Stone, Justice 

Concurring opinion by: Tom Rickhoff, Justice 

Dissenting opinion by: Paul W. Green, Justice 


Sitting: Tom Rickhoff, Justice 

 Catherine Stone, Justice 

 Paul W. Green, Justice 


Delivered and Filed: March 22, 2000


 "The award of $200,000 in guardian-ad-litem fees for a $7.5 million case is a good ole boy
windfall for the trial court's pet lawyers." That is the basic contention of the appellant in this case.
If the guardians ad litem here had followed their classic duty of simply reviewing a settlement agreed
to by the plaintiff and defendant and declaring to the court that it was acceptable, this contention
might have merit. But appellant failed to object that the guardians ad litem exceeded their authority
and failed to make a record demonstrating the resulting fee was excessive. It is my belief that in
personal injury cases confining the guardian ad litem to the limited role of approving a settlement
is unrealistic. It is the appellant's burden to demonstrate an abuse of discretion and, as a former trial
judge, I consider that to be a serious burden. Now a few additional words about guardians ad litem. 

 In Texas, trial judges have little law to guide them in appointing and compensating guardians
ad litem. See, e.g., Tex. R. Civ. P. 173; Garcia v. Martinez, 988 S.W.2d 219 (Tex. 1999); see also 
Jennifer L. Anton, Comment, The Ambiguous Role and Responsibilities of a Guardian Ad Litem in
Texas in Personal Injury Litigation, 51 SMU L. Rev. 161, 162 (1997). I know this from my decade-long experience as a judge of a court that gave preference to cases brought under Titles II and III of
the Family Code. Since I appointed separate guardians ad litem for each parent and the child in
every dependent and neglect case, I probably supervised the appointment of more guardians ad litem
than any other judge in the state. In my court, the recommendations of a guardian ad litem tragically
sometimes had life or death consequences. Personal injury cases are quite different; generally, the
recommendations of the guardian ad litem can have only financial consequences for the minors
involved. But money, properly directed, can change dramatically a child's life and possibly
generations to follow. 

 Because the recommendations have life-altering implications, a judge relies largely on trust
in deciding whom to appoint as a guardian; could I, as the decision-maker, trust the guardian to
contribute to a consensus finding that would be in the minor's best interest? Because trial judges
have been allowed complete discretion regarding whom to appoint as a guardian ad litem and no
mandatory list of qualifications has been promulgated, each trial judge is left to his or her own
judgment in deciding whom to appoint. See Anton, supra at 170.(1) I only appointed guardians who
had attended our court's continuing legal education program for guardians, which was conducted by
court staff, the Department of Human Services, and CASA. Other judges have admirably adopted
their own standardized requirements for guardians. See, e.g., id. at 170-71 (describing the
requirements developed by Judge Bill Rhea of the 162nd Judicial District Court). But all judges who
must utilize guardians ad litem come to know the lawyers practicing in their courts and even if they
are motivated to reward friends one can conclude they pick friends they trust. 

 When it comes to deciding how much guardians ad litem should be paid for their services,
trial judges have been given only slightly more guidance than they have been given in deciding
whom to appoint. See, e.g., Tex. R. Civ. P. 173; Garcia, 988 S.W.2d at 222. Lawyers possessing
great and rare experience cannot be found cheaply. Compensation should be based on the role
guardians ad litem actually play in the process. Although that role has been frequently and
simplistically defined as ascertaining and advocating for the best interest of the minor, the exact
nature of the guardian's role is subject to considerable debate. See Charles T. Cromley, Jr.,
Comment, "[A]s Guardian Ad Litem I'm in a Rather Difficult Position.", 24 Ohio N.U. L. Rev. 567,
567-68 (1998). 

 In Texas, trial judges and guardians have been instructed that the guardian must "participate
in the case to the extent necessary to protect the minor," American Gen. Fire & Cas. Co. v.
Vandewater, 907 S.W.2d 491, 493 n.2 (Tex. 1995) (emphasis added), and that "the guardian ad litem
should be allowed considerable latitude in determining what ... activities are necessary to that effort,"
Roark v. Mother Frances Hosp., 862 S.W.2d 643, 647 (Tex. App.--Tyler 1993, writ denied). But
they are also told that "[a] guardian ad litem who goes beyond his role and assumes the duties of
plaintiff's attorney is not entitled to compensation for work done assisting or acting for plaintiff's
counsel." Roark, 862 S.W.2d at 647. Although not entitled to compensation for performing the
work of an attorney, the guardian is nevertheless exhorted to perform duties typically performed by
attorneys--e.g., conducting a thorough investigation into the facts of the case, contacting counsel,
determining the law pertinent to the case, and reviewing the settlement. See Anton, supra at 172-73.(2)
Mr. Gonzalez testified that at one point, considering the addition of new lawyers, his skills as a
mediator were necessary. Appellant acknowledged the positive contribution that resulted. If these
efforts were determinative to whether a settlement resulted, his wards may have received nothing
at all but for these efforts. And again, while a "guardian ad litem is not an attorney for the child but
an officer appointed by the court to assist in properly protecting the child's interests," Vandewater,
907 S.W.2d at 493 n.2, a guardian may be held liable to the minor for negligently performing the
duties described above, see Byrd v. Woodruff, 891 S.W.2d 689, 708 (Tex. App.--Dallas 1994, writ
dism'd by agr.).

 What, then, is the guardian ad litem to do? Commentators have noted that the distinction
between an attorney and a guardian ad litem is frequently misunderstood or ignored. See, e.g.,
Anton, supra at 167-68, 189-90. This is because the distinction has no real meaning in the parties'
minds, or often, in the guardians' minds. A guardian ad litem displaces the minor's next friend
(typically the minor's parents), becoming the minor's personal representative. See Byrd, 891 S.W.2d
at 705. As such, most guardians attempt to secure the best possible results for their wards--just as
the minors or their parents would themselves if they were not disqualified by age and conflict of
interest. This can be an exceedingly difficult task when there is more money on the table than many
of the litigants ever contemplated. 

 There is evidence that the guardians ad litem in this case attempted to secure the best possible
results for their wards. They expended considerable time and labor, foregoing other employment.
There is also evidence that the legal issues involved were complex and unsettled. The guardians
testified about the steps they took to ensure that there was a favorable settlement for their wards and
to ensure that the settlement was paid out in a way most beneficial to the wards. Although there is
evidence that the guardians understood the distinction between serving as an attorney and as a
guardian ad litem, they did not hesitate to take the actions they believed were necessary for the best
interest of their wards. While some of their actions might be characterized as fitting in the category
of attorney or mediator functions, as opposed to guardian functions, "[t]he trial judge is in a better
position than an appellate court to determine where the role of an ad litem ends and that of plaintiff's
counsel begins." Roark, 862 S.W.2d at 647. 

 It is only logical for each trial judge to select and trust in a personal injury case highly
competent trial lawyers. Once these lawyers are in the mix it is unreasonable not to expect them to
utilize their hard-earned skills even if it requires them to cross beyond the classic role of guardian
ad litem, and when they do, in my judgment they should be compensated.

 I concur in the majority opinion.


 Tom Rickhoff, Justice 

PUBLISH


1. On appeal, we should presume that each trial judge responds to this serious responsibility by tailoring each
appointment so that the skills needed for each case are present. Here the record presents a need for a personal injury trial
lawyer with the ability to recognize that the question of duty now comes under close judicial scrutiny in independent
contractor cases. See, e.g., Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523 (Tex. 1997). In my view, this new
emphasis has resulted in many more favorable trial verdicts that are lost on appeal. This case demanded a very
sophisticated appreciation of current trends in tort law.
2. This article includes a useful checklist to guide guardians ad litem in performing their duties. See Anton, supra
at 192-93.