**REVERSED and REMANDED and Opinion Filed May 24, 2024**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-22-00203-CV

## IN RE: ESTATE OF JOHNETTA PATRICE MORGAN, DECEASED,

**On Appeal from the Probate Court No. 3
Dallas County, Texas
Trial Court Cause No. PR-15-02866-3**

## MEMORANDUM OPINION
Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Goldstein

This cause involves wrongful death and survival claims brought by the three surviving children and putative common law spouse of Patrice Morgan following her death in an automobile collision. The trial court approved a mediated settlement agreement and entered final judgment. In five issues, appellants Ulysses Brown and Eric Clark, as next friends of minor children J.N.M. and J.M., contend that the trial court erred in (1) failing to remove the guardian ad litem appointed to represent J.N.M. and J.M.; (2–4) approving the settlement agreement over their objections on various grounds; and (5) awarding attorney's fees to the administrator and guardian ad litem. Because we conclude that the guardian ad litem acted outside the scope of

her authority by approving the settlement agreement and signing on behalf of the minor children, we reverse and remand for further proceedings.

## BACKGROUND

According to the pleadings in our record, on June 15, 2015, Morgan was driving southbound on Interstate-35E in Dallas, when another driver, Jackqueline Hutton, veered her car into Morgan's Lane and struck Morgan's car. Morgan's car then struck the center concrete barrier, veered back across three lanes of traffic, and came to a stop on the shoulder of the highway with her vehicle still partially in the right lane. Traffic in all three lanes came to a complete stop following the collision. Soon thereafter, Appellee Carlos Sanchez, driving a truck for his employer, appellee Carruthers Landscape Maintenance, Inc. (Carruthers), approached the traffic jam. Sanchez attempted to bypass the traffic jam by veering onto the shoulder. Morgan, seeing the truck driving toward her, exited her vehicle. She was unable to get to safety, however, and Sanchez's truck struck Morgan, pinning her between the truck and her car, killing her.

Morgan was survived by her parents, Johnson Morgan, Jr. and Patty Andrade, and by her three children, J.N.M, J.M., and J.F., who were respectively ages 7, 5, and 1 at the time of Morgan's death. On August 12, 2015, J.F.'s father, appellee Nicholas Ford, initiated a probate proceeding in the Probate Court No. 3 of Dallas County, Texas, by filing an application for dependent administration and an application for determination of heirship. Ford alleged that he and Morgan were

married at common law and that she died intestate. Ford requested that the probate court appoint him as the administrator of appellee the Estate of Johnetta Price Morgan (Estate) and appoint an attorney ad litem to represent any of Morgan's unknown heirs. On October 8, 2015, the trial court appointed Liza Farrow-Gillespie, of the law firm Farrow-Gillespie Heath Wilmoth, LLP (FGHW), as the attorney ad litem for the unknown heirs. Farrow-Gillespie filed a general denial on behalf of the unknown heirs.

On June 28, 2016, Brown, as next friend of J.N.M., filed an answer in opposition to Ford's applications for administration and to determine heirship. The next day, Brown filed a motion for appointment of a guardian ad litem. Brown alleged that Ford was in "open conflict with all 3 minor heirs, including his own son." Brown contended that "all children have an interest adverse to Nicholas Ford and each other." Brown asserted that the probate court "must appoint the same guardian ad litem for all similarly situated parties that are represented by a guardian or next friend[,]" see TEX. R. CIV. P. 173.2(b), and requested that the probate court appoint the same guardian ad litem for all the minor children "to safeguard their interests because they are similarly situated in this case." On June 29, 2016, the trial court granted the motion and appointed attorney Tomi J. Shehan as guardian ad litem for J.N.M., J.M., and J.F. On July 18, Shehan filed an original answer and general denial on behalf of the children. On December 16, 2016, the trial court held a hearing

–3–

on Ford's application for administration and entered an order appointing Liza Farrow-Gillespie as administrator of the Estate.

On December 21, 2016, Andrade and Ford filed a lawsuit against Carruthers, Sanchez, and Hutton in the 116th District Court of Dallas County, Texas, asserting claims for negligence and gross negligence. On December 30, Brown intervened in that lawsuit as next friend of J.N.M. and asserted a wrongful-death claim against Carruthers and Sanchez. On March 30, 2017, Brown filed a motion in the probate court seeking to transfer the wrongful death and survival lawsuit to the probate court, which the probate court granted in an agreed order on April 4. On June 9, 2017, Brown, as next friend of J.N.M., and Clark, as next friend of J.M., filed an amended petition in the probate court, asserting a wrongful-death claim against Carruthers, Sanchez, and Hutton.

On September 18, 2018, Farrow-Gillespie filed a motion to resign her position as administrator of the Estate, and another attorney at FGHW, Ellen Williamson, moved to be appointed successor administrator. The trial court granted the motion and appointed Ellen Williamson successor administrator. On January 30, 2019, Williamson filed a supplemental plea in intervention on behalf of the Estate, asserting wrongful-death claims against Carruthers, Sanchez, and Hutton "on behalf of all known and unknown heirs or beneficiaries entitled to make such claim." The next day, Brown and Clark amended their petition as next friends of J.N.M. and J.M. to add claims for negligence, negligence per se, negligent entrustment, and gross

–4–

negligence against Carruthers and Sanchez, and a claim for negligence against Hutton. The same day, Ford, individually and as next friend of J.F., and Andrade amended their petition to add similar claims.

On June 28, 2019, the probate entered an order appointing Lisa Leffingwell as attorney ad litem for Morgan's unknown heirs and known heirs whose whereabouts are unknown. The order mistakenly stated that Shehan, not Farrow-Gillespie, was the then-current attorney ad litem and purported to remove her from that position. On July 23, the probate court entered an amended order removing Tomi Shehan as guardian ad litem for J.N.M., J.M., and J.F., and appointing attorney Leffingwell to that position. Leffingwell made an appearance as guardian ad litem on August 14 on behalf of the children. On November 4, the probate court, finding that "the Unknown Heirs of Estate of [Morgan] are in need of an Attorney Ad Litem to represent them in connection with the Application to Determine Heirship," entered an order appointing attorney Craig Gant as attorney ad litem for the unknown heirs of the Estate. This order did not expressly remove any prior attorney ad litem.[1] On November 11, 2019, Gant filed an answer and general denial on behalf of the unknown heirs.

Throughout the course of the litigation, the parties attended four mediations. In early 2019, the parties settled the claims against Hutton for $35,000, and the

---

[1] We glean from the trial court's final judgment that the result of these orders was (1) to remove Farrow-Gillespie as attorney ad litem for the unknown heirs and replace her with Gant, and (2) to remove Shehan as guardian ad litem for the children and replace her with Leffingwell.

–5–

probate court ordered Hutton to deposit those funds into the courts' registry. As to Carruthers and Sanchez, the first three mediations did not result in settlement.[2] The fourth and final mediation was requested by Carruthers in a written motion filed on November 5, 2019. The trial court granted the motion and ordered the parties to mediate before Mediator Aric Stock on or before February 2, 2020. On January 9, 2020, Brown and Clark filed a motion to reconsider the order, asserting that they were "opposed to any more mediations in general, and in particular are opposed to mediating with Aric Stock" due to "an exchange between Mr. Stock and one of the Plaintiffs." The fourth mediation was held on January 30, 2020. In attendance were Andrade, Ford, a Carruthers representative, Williamson, Leffingwell, and Gant. Neither Brown and Clark, as next friends, nor their legal counsel attended. Ultimately, the attendees signed an agreement (Settlement Agreement) purporting to settle the case for $1.1 million, to be divided among the three children, Andrade, and Ford. Leffingwell, as guardian ad litem, signed on behalf of all three children. According to counsel for Brown and Clark, he was presented with the Settlement Agreement after the mediation, but he declined to sign it on his clients' behalf.

On January 31, 2020, Carruthers and Sanchez filed a motion to approve the Settlement Agreement. On February 3, Brown and Clark filed an objection to the motion to approve on grounds that they did not agree to the settlement. Brown and

---

[2] It is unclear from the record whether the guardian ad litem or attorney ad litem attended the first three mediations.

Clark argued that Leffingwell, as guardian ad litem for the children, (1) was not authorized to enter into a settlement agreement on the children's behalf; (2) failed to confer with Brown and Clark; (3) agreed to terms that granted money to a party who was not entitled to settlement funds; (4) agreed to payment into the Estate of only attorney's fees; and (5) failed to withdraw as guardian ad litem for J.N.M. and J.M. when the law required her withdrawal. The same day, Brown and Clark filed a motion to remove Leffingwell as guardian ad litem for J.N.M. and J.M. The next day, they filed affidavits disclaiming any right to the Estate and any interest in the wrongful-death claims asserted by their children.

On February 13, Brown and Clark filed: (1) an amended objection arguing that they never consented to the appointment of a guardian ad litem in connection with the wrongful-death litigation and that the guardian ad litem breached her role by entering into a settlement with Ford based on his claims as an heir to the Estate;[3] (2) a response to Carruthers and Sanchez's motion to approve the settlement on the same grounds as their objection and amended objection to the settlement; and (3) an objection to "the administrator's attempt to settle [J.N.M and J.M.'s] share of their mother's estate for an amount that would produce little or no benefit to the children." That same day, Ford filed a sworn disclaimer of interest, in which he disclaimed

---

[3] Ford signed the settlement agreement on behalf of himself individually and as next friend of J.F.

–7–

"any and all right, title and interest in and to any property which [he] otherwise might be entitled to receive from [the Estate] by will or intestacy."

On February 14, 2020, Carruthers and Sanchez filed a reply to Brown and Clark's response to the motion to approve the settlement. Carruthers and Sanchez argued that (1) the guardian ad litem was authorized to settle on behalf of the children as no party requested, and the trial court did not impose, a limitation on the guardian ad litem's authority; (2) the trial court was compelled to approve the settlement pursuant to this Court's decision in *Grunewald v. Technibilt Corp.*, 931 S.W.2d 593, 596 (Tex. App.—Dallas 1996, writ denied), and (3) that a conflict had arisen between Brown and Clark and their children due to Brown and Clark's opposition to the settlement and attempts to have the guardian ad litem removed. The same day, Williamson, filed on behalf of the Estate an adoption and joinder of Carruthers and Sanchez's reply. On February 19, the trial court entered (1) an order denying Brown and Clark's motion to remove Leffingwell as guardian ad litem and (2) an order granting Carruthers and Sanchez's motion to approve the settlement.[4]

On February 17, 2020, Leffingwell filed a guardian ad litem's report.[5] In the report, Leffingwell stated that she attended the January 30 mediation and believed the settlement to be in the best interest of the children. She noted that the liability

---

[4] The trial court also entered an order granting the administrator's motion to approve the settlement, but no such motion appears in our record.

[5] The record reflects no other report of the Guardian Ad Litem filed since the appointment and specifically no finding by a Guardian Ad Litem of a conflict between Brown and Clark and their minor children until an after the fact settlement assertion of motions filed.

–8–

issues in the case were "hotly disputed" and that the certainty of settlement "far outweigh[ed] the continued risks of litigation and ultimately trial." She further advised that "conflicts apparent to all continue to exist between the three minor children and their next friends, as evidenced by the recent Motions in this case." [6]

The court scheduled a hearing for February 2, 2022, on Ford's application to determine heirship. On January 27, 2022, Brown and Clark filed a supplemental response to Carruthers and Sanchez's motion to enforce settlement, a supplemental response "to defendants' attempt to settle the children's cases without parental consent," and a supplemental objection to a non-jury hearing on the issue of heirship. Brown and Clark argued that the settlement violated their constitutional rights as the parents of J.N.M and J.M. On February 1, Carruthers and Sanchez filed a motion to enter final judgment. At the hearing, Gant testified that Morgan had no other heirs besides the three children. Counsel for Ford stated that Ford was no longer seeking to be adjudicated an heir of Morgan. The trial court, having heard no objection to Ford's intent to nonsuit his claim, determined that there were no fact disputes with respect to heirship.

---

[6] On March 6, Brown and Clark filed a notice of appeal, seeking to challenge the trial court's denial of their motion to remove the guardian ad litem. We dismissed that appeal for want of jurisdiction because no final judgment had been entered and there was no statutory authority for our exercise of jurisdiction over the interlocutory orders of the trial court. *See In re Estate of Morgan*, No. 05-20-00328-CV, 2020 WL 6156016, at *2 (Tex. App.—Dallas Oct. 21, 2020, no pet.) (mem. op.).

On February 4, 2022, the trial court entered final judgment. Brown and Clark filed a motion for new trial, which was denied by operation of law. This appeal followed.

**DISCUSSION**

Brown and Clark present five issues on appeal. In their first issue, Brown and Clark assert that the trial court erred in failing to remove the guardian ad litem on the ground that no conflict existed between the children and their next friends. In their second through fourth issues, Brown and Clark argue that the trial court erred in approving the Settlement Agreement because they did not agree to it, the guardian ad litem exceeded her authority in signing it on behalf of the children, the guardian ad litem breached her fiduciary duty by settling the children's claim for far less than the value of the claim, and the settlement was not in the children's best interest. In their fifth issue, Brown and Clark aver that the trial court erred in awarding attorney's fees to the administrator and guardian ad litem on insufficient evidence.

## I.  STANDARD OF REVIEW

We review a trial court's appointment and removal of a guardian ad litem, approval of a settlement agreement, and award of attorney's fees to a guardian ad litem and estate administrator for abuse of discretion. *See McGough v. First Court of Appeals*, 842 S.W.2d 637, 640 (Tex. 1992) (reviewing appointment of guardian ad litem for abuse of discretion); *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex. 1992) (same for removal of guardian ad litem); *Webre v. Black*, 458 S.W.3d 113, 116 (Tex.

–10–

App.—Houston [1st Dist.] 2015, no pet.) (approval of settlement subject to abuse of discretion); *Brownsville-Valley Reg'l Med. Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995) (amount of fees to guardian ad litem reviewed for abuse of discretion); *Barrett v. Parchman*, 675 S.W.2d 289, 291 (Tex. App.—Dallas 1984, no writ) (amount of fees awarded to administrator of estate reviewed for abuse of discretion).

A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). A trial court has no discretion in determining what the law is or applying the law to the facts; thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Condom Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 748 (Tex. App.—Dallas 2012, no pet.). With respect to factual matters, a trial court abuses its discretion if, under the record, it reasonably could have reached only one decision and failed to do so. *Id.* A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Id.*

## II. APPLICABLE LAW

From the inception the record reflects a conflation of the role of a guardian ad litem, the role of an attorney ad litem, and a wholesale failure to adhere to the procedural construct of each. The record, therefore, necessitates providing a limited framework of the applicable rules that guide our analysis and inform our decision.

### A. Guardians Ad Litem

In Texas, minors "are considered to be under a legal disability and are therefore unable to sue or be sued in their individual capacities." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). Minors also lack "the legal capacity to employ an attorney or anyone else to watch over her interests." *Byrd v. Woodruff*, 891 S.W.2d 689, 704 (Tex. App.—Dallas 1994, writ dism'd). Thus, minors "are required to appear in court through a legal guardian, a 'next friend,' or a guardian ad litem." *See Lovato*, 171 S.W.3d at 849; *see also* TEX. R. CIV. P. 44 (governing next friends); TEX. R. CIV. P. 173 (governing guardians ad litem). A minor's next friend appears in court "in a representative capacity only, and the minor remains the real party in interest." *Byrd*, 891 S.W.2d at 704. "Although the minor is the real plaintiff, the bringing of a suit by next friend does not change the minor's status." *Id.* "The minor is *non sui juris* and remains altogether under the court's protection." *Id.*

In certain circumstances, a court may appoint a guardian ad litem to represent the child in a lawsuit. *See Brownsville-Valley Reg'l Med. Ctr., Inc. v. Gamez*, 894 S.W.2d 753, 756 (Tex. 1995) ("The term 'ad litem' means 'for the suit.'"). "The appointment of a guardian ad litem implicates two distinct interests: that of the parents in raising their minor children and that of the state to protect children." *In re KC Greenhouse Patio Apartments, LP*, 445 S.W.3d 168, 174 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "Parental authority over decisions involving parents' minor children derives from the liberty interest contained in the Fourteenth Amendment to

the United States Constitution." *Id.* (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000), and *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). Included in a parent's right to make decisions for his or her child is the right to bring a lawsuit on the child's behalf. *See* TEX. FAM. CODE ANN. § 151.001(a)(7). This exclusive right may not be exercised by a third party absent an appropriate court order. *KC Greenhouse*, 445 S.W.3d at 174; *see also Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 446 (Tex. 1998) (Gonzalez, J., concurring) ("Under Texas law . . . , only the parents or guardians of a minor may represent their legal interests."). The law presumes that parents act in the best interest of their children, and their right to make decisions for their children is one of "constitutional dimension." *Troxel*, 530 U.S. at 65, 68; *see also Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 622 (Tex. 2004); *KC Greenhouse*, 445 S.W.3d at 174.

The other interest is that of the state in protecting children from harm under the doctrine of *parens patriae*. *See KC Greenhouse*, 445 S.W.3d at 175 (citing *Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417, 423 (Tex. 2007)). "The State of Texas has the authority and duty to guard the well being of children, even if so doing requires limiting the freedom and authority of parents over their children." *Id.* (quoting *Alvarez v. Tex. Dep't of Protective & Regulatory Servs.*, No. 03-02-00008-CV, 2002 WL 31599225, at *1 (Tex. App.—Austin Nov. 21, 2002, no pet.) (mem. op.)). Thus, in limited circumstances, a trial court, acting on behalf of the State as *parens patriae*, must "step in" and enter orders to protect the child's well-being. *See*

*id.* One such circumstance is when a parent sues both individually and on behalf of his or her minor child and there is an apparent conflict of interest between the two.

Texas Rule of Civil Procedure 173 authorizes a trial court to appoint a guardian ad litem only when such an apparent adverse interest appears to exist. *See* TEX. R. CIV. P. 173.2(a)(1)[7]; *Byrd*, 891 S.W.2d at 705. Rule 173 thus "balances the interests of the parent and the state and identifies the circumstance that creates [the trial court's] responsibility[.]" *KC Greenhouse*, 445 S.W.3d at 174. The appointment of a guardian ad litem is necessary in such circumstances because a parent who has conflicting interests with his or her child "cannot be presumed to act in the child's best interest in the lawsuit." *Id.*; *cf. Troxel*, 530 U.S. at 68 (parents presumed to act in child's best interest).

Under Rule 173.3, a trial court may appoint a guardian ad litem on a party's motion or sua sponte and may do so only by written order. *See* TEX. R. CIV. P. 173.3(a), (b). Rule 173.4 defines the role and duties of a guardian ad litem. A guardian ad litem's role is that of an officer of and advisor to the court. *See* TEX. R. CIV. P. 173.4(a); *see also Land Rover U.K., Ltd. v. Hinojosa*, 210 S.W.3d 604, 607 (Tex. 2006) ("A guardian ad litem is not an attorney for the child but an officer appointed by the court to assist in protecting the child's interests when a conflict of interest arises between the child and the child's guardian or next friend."). Once

---

[7] We focus on Chapter 173 as this was the basis for the initial motion to appoint a guardian ad litem. No party has sought the appointment of a guardian ad litem under another statute or other rule, and no party argues that a different statute or other rule applies in this case.

appointed, the guardian ad litem "must determine and advise the court whether a party's [i.e., a child's] next friend or guardian has an interest adverse to the [child]." TEX. R. CIV. P. 173.4(b).[8] Although the rule does not provide a time limit for making that determination and advising the court, the Texas Supreme Court has stated that doing so is a guardian ad litem's "initial role." *See Ford Motor Co. v. Stewart, Cox, & Hatcher, P.C.*, 390 S.W.3d 294, 297 (Tex. 2013). If the trial court finds that there is no conflict, or that there used to be a conflict but it has ceased to exist, the trial court should remove the guardian ad litem. *Gamez*, 894 S.W.2d at 755.

In *KC Greenhouse*, our sister court noted that "[t]he Texas Supreme Court has not defined what constitutes an adverse interest under rule 173 but there are a number of reoccurring situations." 445 S.W.3d at 168. Courts "most commonly apply the rule to adverse interests relating to the division of settlement proceeds." *Id.* This court has made the same observation: "A conflict of interest between the minor and next friend often arises in a settlement situation where the parties vie for different portions of a fixed settlement amount." *Byrd*, 891 S.W.2d at 705. To protect the child's interest in that scenario, Rule 173.4 provides that a guardian ad litem *may* participate "in mediation or a similar proceeding to attempt to reach a settlement" and must participate "in any proceeding before the court whose purpose is to determine whether a [child]'s next friend or guardian has an interest adverse to the

---

[8] The record is devoid of any evidence that either of the appointed guardians ad litem made this determination and so advised the trial court as part for their initial role upon appointment.

–15–

party, or whether a settlement of the [child]'s claim is in the [child]'s best interest." TEX. R. CIV. P. 173.4(d). However, "[w]hen an offer has been made to settle the claim of a [child] represented by a next friend or guardian, a guardian ad litem has the limited duty to determine and advise the court whether the settlement is in the [child]'s best interest." TEX. R. CIV. P. 173.4(c).

Besides these limited duties, a guardian ad litem is not generally authorized to participate in litigation. *See Hinojosa*, 210 S.W.3d 604, 607 ("As the personal representative of a minor, a guardian ad litem is required to participate in the case only to the extent necessary to protect the minor's interest and should not duplicate the work performed by the plaintiff's attorney."). However, Rule 173.4(d) provides an exception: "A guardian ad litem . . . must not participate in discovery, trial, or any other part of the litigation unless: (A) further participation is necessary to protect the [child]'s interest that is adverse to the next friend's or guardian's, and (B) the participation is directed by the court in a written order stating sufficient reasons." TEX. R. CIV. P. 173.4(d). Where a court order is silent as to the scope of the guardian ad litem's duties, appellate courts must consider the context of the appointment to "determine the nature of the appointment and the duties of the ad litem." *Stewart, Cox, & Hatcher*, 390 S.W.3d at 297.

## B. Attorneys Ad Litem

The trial court is required to, and in this case did, appoint an attorney ad litem "in a proceeding to declare heirship to represent the interests of heirs whose names or locations are unknown. " TEX. ESTATES CODE ANN. § 202.009(a).[9]

The role of a guardian ad litem is often confused with that of an attorney ad litem. *See, e.g.*, *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012) (construing trial court order to appoint a guardian ad litem despite language in the order expressly appointing an "attorney ad litem"). An attorney ad litem "performs the same services as any other attorney—giving advice, doing research, and conducting litigation." *City of Houston v. Woods*, 138 S.W.3d 574, 582 (Tex. App.— Houston [14th Dist.] 2004, no pet.). Conversely, a guardian ad litem's duty "is not the duty of a plaintiff's attorney generally representing the incapacitated person in regard to the cause of action." *Garcia*, 363 S.W.3d at 577. Thus, unlike a guardian ad litem, who cannot participate in litigation absent a court order, an attorney ad litem *must* participate in litigation, as that is the entire purpose of his or her appointment.[10] Among the powers of an attorney ad litem is the power to enter into

---

[9] The trial court "may expand the appointment of the attorney ad litem appointed under Subsection (a) to include representation of an heir who is an incapacitated person on a finding that the appointment is necessary to protect the interests of the heir." TEX. ESTATES CODE ANN. § 202.009(b). The trial court did not expand the duties of the attorney ad litem in this matter to represent the known minor heirs.

[10] Some statutes authorize, and some mandate, such attorney-ad-litem appointments. *See, e.g.*, TEX. FAM. CODE ANN. § 107.012 (requiring the appointment of an attorney ad litem to represent the interests of a child in "a suit filed by a governmental entity requesting termination of the parent-child relationship or to be named conservator of a child"); *id.* § 107.021(a) (giving trial courts discretion whether to appoint an attorney ad litem "[i]n a suit in which the best interests of a child are at issue, other than a suit filed by a

a settlement agreement on behalf of the client. *See Wakefield v. Ayers*, No. 01-14-00648-CV, 2016 WL 4536454, at *4 (Tex. App.—Houston [1st Dist.] Aug. 30, 2016, no pet.) (enforcing settlement agreement signed by attorney but not client because attorney's acts within the scope of employment are considered the client's acts) (citing *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 693 (Tex. 1986)).

## III. ANALYSIS

### A. Removal of the Guardian Ad Litem

In their first issue, Brown and Clark contend that the trial court erred in failing to remove Leffingwell as guardian ad litem for J.N.M. and J.M. Appellees respond that Brown and Clark waived their right to challenge the appointment and have no standing to complain about it on appeal.

As a threshold issue, we reject appellees' argument that Brown and Clark were required to bring a mandamus proceeding to challenge the trial court's refusal to remove the guardian ad litem. Rule 173.7 provides that "Any party *may* seek mandamus review of an order appointing a guardian ad litem or directing a guardian ad litem's participation in the litigation." TEX. R. CIV. P. 173.7(a) (emphasis added). The rule does not say that a party "must" file a mandamus proceeding or that the availability of mandamus relief precludes an appeal. *See id.* We conclude Brown and

---

governmental entity requesting termination of the parent-child relationship or appointment of the entity as conservator of the child").

–18–

Clark may challenge the trial court's denial of their motion to remove the guardian ad litem on direct appeal. We now turn to the merits of that issue.

In *Stewart, Cox, & Hatcher*, on which both parties rely, the supreme court considered a similar issue. In that case, minor child I.F. was injured and her father killed in an automobile accident. *Stewart, Cox, & Hatcher*, 390 S.W.3d at 296. I.F.'s mother, Richardson, sued Bridgestone/Firestone and Ford Motor Company as I.F.'s next friend in Orange County. *Id.* Bridgestone/Firestone settled with Richardson in 2003, and the Orange County judge (the "regular judge" under TEX. R. JUDIC. ADMIN. 11) approved the settlement. The regular judge also found that a guardian ad litem was unnecessary because there was no conflict of interest between Richardson and I.F. *See id.* In 2009, Ford settled with Richardson, and the parties submitted the settlement agreement to the pretrial judge[11] for approval. The pretrial judge sua sponte appointed a guardian ad litem to represent I.F.'s interests in the settlement. *Id.* Richardson attested by affidavit that her interests did not conflict with I.F.'s because she had no claims in the suit or financial interest in the settlement. *See id.* The guardian ad litem responded that he did not have enough information "upon which to determine and advise" the pretrial judge whether Richardson's interests were adverse to I.F.'s. *Id.* Richardson asked the pretrial judge to reconsider the appointment and, when the pretrial judge refused, sought mandamus review. *Id.*

---

[11] The suit was assigned to a Montgomery County district judge under Rule 11 of the Rules of Judicial Administration. *See id.* (citing TEX. R. JUDIC. ADMIN. 11 (providing for the assignment of a "pretrial judge" in cases that involve "common material issues of fact and law")).

In the court of appeals, Richardson argued that the pretrial judge erred in appointing a guardian ad litem because, as she attested in her affidavit, she had no claim for damages. *In re Richardson*, No. 09-10-00032-CV, 2010 WL 877558, at *3 (Tex. App.—Beaumont Mar. 11, 2010, no pet.). The court of appeals rejected this argument, holding that "[t]he lack of an asserted claim does not mean that a guardian ad litem appointment is prohibited." *Id.* The court explained that "[e]ven if a claim has not been asserted, a parent's responsibilities, impacted by an injury to a child, continue." *Id.* (citing TEX. FAM. CODE ANN. § 151.001). Additionally, the court noted that the pretrial judge's basis for appointing a guardian ad litem appeared to stem from Richardson and her attorney's conduct regarding the prior settlement agreement with Bridgestone/Firestone. *Id.* Although Richardson denied the allegation and argued that it did not create a conflict even if it were true, the court of appeals held that the pretrial judge did not abuse his discretion. *Id.* The court explained that even if a next friend's acts "may not be sufficient to justify removal of a next friend" and "may be shown not to reflect an actual adverse interest, the language of Rule 173 authorizes the appointment [of a guardian ad litem] when the next friend 'appears to the court to have an interest adverse to the party.'" *Id.* (quoting TEX. R. CIV. P. 173.2(a)(1)).

The year after the *Richardson* court denied mandamus relief, the case returned to the court on direct appeal. *Stewart, Cox & Hatcher, P.C. v. Ford Motor Co.*, 350 S.W.3d 369, 377 (Tex. App.—Beaumont 2011), *review granted, judgment rev'd,*

–20–

390 S.W.3d 294 (Tex. 2013). In its cross-appeal, Ford Motor Company complained that the pretrial judge erred in appointing the guardian ad litem and taxing the ad litem's costs against Ford. *Id.* at 376–77. As it did in *Richardson*, the court of appeals again held that the pretrial judge did not abuse his discretion. *Id.* at 177. The court reasoned that although Richardson attested to having no claims of her own, there was an "apparent" conflict between her and I.F. because I.F. incurred medical expenses and "a child's parents are legally obligated to pay their child's medical expenses." *Id.* (citing TEX. FAM. CODE ANN. § 151.001(a)(3)).

The supreme court rejected this conclusion. *Stewart, Cox, & Hatcher, P.C.*, 390 S.W.3d at 298. The Court held that "a parent's obligation to provide her child with medical care, standing alone, does not create a conflict of interest within the confines of Rule 173." *Id.* The Court also rejected the ad litem's argument, made in the trial court and advanced in both the mandamus proceeding and direct appeal, that circumstances surrounding the prior settlement with Bridgestone/Firestone authorized the pretrial judge to appoint the ad litem. The Court explained:

> As to the initial conflict-of-interest determination, Richardson testified in her affidavit that she was not involved in the accident, she was not asserting any claims in this lawsuit on her own behalf, she was not an heir or representative of the estate of I.F.'s father, she had no financial interest in that estate's recovery, and she understood and agreed that she had no right to the proceeds of any settlement of the litigation. In [the guardian ad litem's] response, he primarily took issue with the regular judge's prior approval of the Firestone settlement in 2003 and the amount of attorney's fees awarded pursuant to the contingency fee agreement in that settlement. However, those issues have no bearing on

the guardian ad litem's initial role in determining whether Richardson's interests were adverse to I.F.'s in the context of the Ford settlement.

*Stewart, Cox, & Hatcher, P.C.*, 390 S.W.3d at 298. The Court concluded that the pretrial judge abused his discretion in failing to remove the guardian ad litem.

Here, Brown, as next friend of J.M., requested the appointment of a guardian ad litem pursuant to Texas Rule of Civil Procedure 173, relative to Ford's filing of the heirship and an administration application. The identified adverse interest was that of Ford as against the three minor heirs, all similarly situated. The Court appointed a guardian ad litem for all three minor children. Rather than perform the mandated conflict analysis, *see* TEX. R. CIV. P. 173.4(b), the guardian ad litem filed a general denial on behalf of the three minor children, erroneously assuming the role of an attorney. *See* TEX. R. CIV. P. 173.4(d)(3).[12] In fact, at no time until after the Settlement Agreement did any guardian ad litem advise the court of a conflict or adverse interest as between Clark and Brown and the minor children. Further, there was no specific order delineating the responsibilities of the guardian ad litem as to the probate proceedings, no expansion of the guardian ad litem's responsibilities upon the transfer of the personal injury lawsuit, and no evidence in the record as to why the next friends were displaced for purposes of the mediated settlement when the guardian ad litem appeared not to have participated in the prior three mediations.

---

[12] The attorney ad litem, appointed to represent the unknown heirs appropriately filed a general denial.

–22–

Brown and Clark filed their motion to remove Leffingwell as guardian ad litem after Carruthers and Sanchez filed their motion to enforce the Settlement Agreement that resulted from the fourth mediation in the personal injury portion of the proceedings. The only evidence before the trial court supporting the existence of a conflict of interest between Brown and J.N.M. or Clark and J.M. was in the guardian ad litem's post-settlement report filed on February 17, 2020. In the report, Leffingwell noted that it was Brown who had initially requested the appointment of a guardian ad litem on the ground that the children had an adverse interest to Ford and "each other." Leffingwell advised the trial court that "conflicts apparent to all continue to exist between the three minor children and their next friends, as evidenced by the recent Motions[13] in this case." We discern Leffingwell's argument to be that by opposing the settlement, which Leffingwell believed to be in the best interest of the children, Brown and Clark were taking a position adverse to J.N.M. and J.M. Sanchez and Carruthers reiterated the same argument in their response to Brown and Clark's motion:

> [T]he Next Friends and their attorney . . . have a financial interest in the amount and division of the settlement proceeds. This is evidenced by Plaintiffs' strong opposition to a settlement distributing a quarter of one million dollars each to both [J.M.] and [J.N.M.]. Plaintiffs' [*sic*] assert in their Response that "the proposed settlement of Ms. Morgan's estate's claim would not produce but a pittance of money for Ms. Morgan's children and holds much more value if the case were it to be submitted to a jury." Plaintiffs would prefer to subject the Minors to the

---

[13] The "recent Motions" were not identified, but the record reflects that the only motions filed immediately before Leffingwell's report were in opposition to her appointment and to the settlement agreement.

–23–

risk of a take nothing judgment at a jury trial rather than agree to each minor receiving a quarter of one million dollars.

We reject the assertions made by Leffingwell, Sanchez and Carruthers. A conflict might arise if Brown and Clark's refusal to accept the settlement was because they wanted more for themselves and less for their children. *See Byrd*, 891 S.W.2d at 705 ("A conflict of interest between the minor and next friend often arises in a settlement situation where the parties vie for different portions of a fixed settlement amount."). But the record is replete with evidence that Brown and Clark wanted more for their children and nothing for themselves. Brown and Clark each filed affidavits attesting that they (1) were the fathers of J.N.M. and J.M. respectively; (2) were not heirs to or representatives of the Estate; (3) were not involved in the incident resulting in, or asserting any claims arising from, Morgan's death; (4) had no financial interest in the Estate's recovery; and (5) were not entitled to any proceeds from any settlement in the litigation. Brown and Clark also contested Ford's claim of heirship and, in their response to Carruthers and Sanchez's motion to enforce the Settlement, argued that the settlement "granted money to a party that is not entitled to any."[14]

While it is true that a party who refuses to accept a settlement offer risks a take-nothing judgment after a trial on the merits, it is also true that the refusal may result in a larger recovery. Reasonable minds may differ as to whether Brown and Clark's opposition to the settlement was in their children's best interest, but that is

---

[14] We do not opine on whether these arguments have any merit. The trial court will be free to resolve them on remand.

not the question before us. *See KC Greenhouse*, 445 S.W.3d at 179 (issue of whether mother's refusal to prosecute her daughter's claim was "not determinative in deciding whether to appoint a guardian ad litem."). We must decide whether Brown and Clark's litigation strategy was sufficient to create a conflict of interest with their respective children. We conclude that seeking a larger recovery than the amount in a settlement offer is not evidence of an adverse interest for the purposes of Rule 173. We agree with our sister court that "'[e]ven if the guardian ad litem were a more effective representative for the ward, the rights of parents, next friends and guardians cannot be set aside' through rule 173." *Id.* (quoting *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex. 1992) (Hecht, J., concurring)).

We now turn to Brown and Clark's assertion that the trial court should have removed the ad litem *before* the case was mediated to settlement. We decline to so hold. A trial court should remove a guardian ad litem when "the evidence presented" fails to confirm the existence of a conflict of interest. *Stewart, Cox, and Hatcher*, 390 S.W.3d at 297. Brown requested the appointment during the initial probate proceedings; there was no intervening review or determination by the court, the guardian ad litem, or any party of a purported conflict, and no party sought the guardian ad litem's removal before the fourth mediation. Nothing in the text of Rule 173 suggests that a trial court must act *sua sponte* in removing an ad litem. Here, the record is silent as to whether there was any action by the guardian ad litem that rose to the level of displacement of the next friend or retained legal counsel prior to the

fourth mediation. The trial court was not presented with any evidence of a conflict until Brown and Clark filed their motion to remove the ad litem, which was *after* the fourth mediation. We therefore decline to hold that the trial court abused its discretion by failing to remove the guardian ad litem before the fourth mediation.

We conclude that the trial court erred in denying Brown and Clark's motion to remove the guardian ad litem. We sustain Brown and Clark's first issue only to that extent.

### B. Approval of Settlement Agreement and Entry of Judgment

In their second through fourth issues, Brown and Clark assert that the trial court erred in approving the Settlement Agreement and entering judgment thereon because: (Issue 2) Leffingwell exceeded the authority given her in the order appointing her as guardian ad litem; (Issue 3) Leffingwell breached her fiduciary duty to the children in recommending the Settlement Agreement; and (Issue 4) the Settlement Agreement was not in the children's best interest. Because our resolution of Issue 2 is dispositive, we do not reach Issues 3 and 4.

#### 1. Whether the Guardian ad Litem Exceeded her Authority in Signing the Settlement Agreement

Brown and Clark argue that Leffingwell exceeded the scope of her authority when she "supplanted the rights of the minors' fathers" and "acted as the minors' representative or as their 'attorney ad litem'" by signing the Settlement Agreement on their children's behalf. We agree. Under Rule 173, a guardian ad litem "may participate in mediation or a similar proceeding to attempt to reach a settlement."

TEX. R. CIV. P. 173.4(d)(1). Additionally, "[w]hen an offer has been made to settle the claim of a party represented by a next friend or guardian, a guardian ad litem has the *limited duty* to determine and advise the court whether the settlement is in the party's best interest." TEX. R. CIV. P. 173.4(c). The trial court may expand the guardian ad litem's role in litigation, but only when "necessary to protect [the child's] interest that is adverse to the next friend's or guardian's" and must do so "in a written order stating sufficient reasons." TEX. R. CIV. P. 173.4(d)(3).

Here, Leffingwell did not merely participate in mediation and recommend approving the Settlement Agreement to the trial court, she purported to bind J.N.M. and J.M. to the Settlement Agreement as their legal representative. We must therefore consider whether any court order gave her this authority. *See id.* Where a court order is silent as to the scope of the guardian ad litem's duties, appellate courts must consider the context of the appointment to "determine the nature of the appointment and the duties of the ad litem." *Stewart, Cox, & Hatcher*, 390 S.W.3d at 297.

The trial court's first order appointing a guardian ad litem was entered on June 29, 2016. The order stated that the trial court "considered the foregoing Motion for Appointment of Guardian Ad Litem on behalf of all the children." The referenced motion was filed by Brown the day before the order. In the motion, Brown claimed that a guardian ad litem was needed because Ford, who sought to be named heir and administrator of Morgan's estate, was "in an open conflict of interest with all 3 minor

heirs, including his own son." The order granted the motion and appointed Shehan as the guardian ad litem for all three children. The order was silent on the scope of Shehan's authority, any duties assigned to her, and any deadlines she had with respect to those duties. Our record contains no filings by Shehan other than an original answer on July 18, 2016.[15] Over three years later, on July 23, 2019, the trial court entered an order removing Shehan as guardian ad litem and replacing her with Leffingwell. By this point, the trial court had transferred in the wrongful-death and survival claims by Ford, Andrade, Brown, and Clark against Carruthers and Sanchez. However, the record contains no request by any party to remove Shehan, appoint a replacement for her, or broaden the scope of the guardian ad litem's authority.[16] On August 15, 2019, Leffingwell filed an entry of appearance as guardian ad litem.

Neither the June 29, 2016 order nor the July 23, 2019 order authorized the guardian ad litem to sign the Settlement Agreement on behalf of J.M or J.N.M. The final judgment found that Leffingwell, the guardian ad litem, was "legally empowered and authorized to sign, on behalf of the Minor Plaintiffs . . . the Release and Settlement Agreement[.]" Appellees advance several arguments in support of

---

[15] The trial court's docket sheet, filed as part of our record, reveals that Shehan's only other filing in the trial court was a vacation letter on June 19, 2017.

[16] The record before us is silent on the nature and scope of Shehan's participation prior to her replacement, as there is no filing of a guardian ad litem report or indication of the level of participation, if any, by Shehan in the prior mediations.

the guardian ad litem's authority to bind the minor plaintiffs. We consider each argument in turn.

### 2. *Whether the Guardian ad Litem Displaced Brown and Clark as Next Friends*

Appellees first argue that, once appointed, Leffingwell "replaced" the next friends and had the "sole authority to enter into settlement agreements" on the children's behalf. In support, appellees cite *In re Richardson*, 2010 WL 877558, at *2, and *Moses v. Wal-Mart Stores Tex. LLC*, No. 4:20-CV-00882, 2022 WL 420537, at *1 (S.D. Tex. Jan. 27, 2022). Appellees' reliance on these cases is misplaced.

### a. Pre-2005 Rule 173

Prior to 2005, when Rule 173 was amended, a guardian ad litem had broad authority from the moment he or she was appointed. Critically, under the pre-amendment version of Rule 173, (1) the mere appearance of a conflict between a next friend and a child not only authorized, but mandated, the appointment of a guardian ad litem; and (2) once appointed, the guardian ad litem "displaced" the next friend, meaning the ad litem took away the decision-making authority of the next friend. *See Newman v. King*, 433 S.W.2d 420, 421 (Tex. 1968) (holding, in context of expounding upon the rules and statutes authorizing a name change application, that "displacement of the next friend with a court appointed guardian ad litem, although mandatory when authorized, is authorized only when it 'appears to the court' that the next friend has an interest 'adverse to the minor'"); *see also Grunewald v. Technibilt Corp.*, 931 S.W.2d 593, 595 (Tex. App.—Dallas 1996, writ

denied) ("Once appointed, the guardian ad litem displaces the next friend and becomes the personal representative of the individual who is subject to a legal disability.").

This pre-2005 amendment framework had "significant consequences." *See Byrd*, 891 S.W.2d at 706 n.9. In *Byrd*, for example, we noted that such consequences could include a trial court accepting a "guardian ad litem's recommendation to settle [an] infant's claim over counsel's and parent's wishes to the contrary." *Id.* (citing *Roberts v. Parrish*, 567 S.W.2d 581, 584 (Tex. App.—Waco 1978, writ ref'd n.r.e.)). We went further in *Grunewald*, holding that a child's parents had no standing to appeal a trial court's approval of a settlement agreement because the duly appointed guardian ad litem who recommended the settlement had "displaced" the parents and had the sole authority over the child's claims in the lawsuit, including the right of appeal. *Grunewald*, 931 S.W.2d at 596.

### b. Post-2005 Amendment Rule 173

The 2005 amendment to Rule 173 retained the first part of the rule. *See* TEX. R. CIV. P. 173.2(a) ("The court *must* appoint a guardian ad litem for a party represented by a next friend or guardian *only if*: (1) the next friend or guardian *appears* to the court to have an interest adverse to the party, or (2) the parties agree." (emphasis added)). However, under the current version of Rule 173, a guardian ad litem does not enjoy broad authority upon appointment. Rather, the guardian ad litem's "initial" duty upon appointment is to advise the court whether there is a

–30–

conflict between an incapacitated party and his or her next friend. *Stewart, Cox, & Hatcher*, 390 S.W.3d at 297 (citing TEX. R. CIV. P. 173.4(b)). Rule 173 contemplates that the trial court will then hear evidence about whether the conflict exists to warrant continued participation by the guardian ad litem. *See id.* ("The trial court should remove the guardian ad litem when the *evidence presented* fails to confirm that a conflict of interest exists." (emphasis added)). After that, the guardian ad litem may serve a broader role, such as "participat[ing] in discovery, trial, or any other part of the litigation," but only when necessary to protect the child's interest and, even then, only when "directed by the court in a written order stating sufficient reasons." *See* TEX. R. CIV. P. 173.4(d)(3).

Thus, under the post-amendment version of Rule 173, a guardian ad litem does not automatically "displace" a next friend. The comments to Rule 173 make this clear:

> 3. The rule contemplates that a guardian ad litem will be appointed when a party's next friend or guardian appears to have an interest adverse to the party because of the division of settlement proceeds. In those situations, the responsibility of the guardian ad litem as prescribed by the rule is very limited, and no reason exists for the guardian ad litem to participate in the conduct of the litigation in any other way or to review the discovery or the litigation file except to the limited extent that it may bear on the division of settlement proceeds. A guardian ad litem may, of course, choose to review the file or attend proceedings when it is unnecessary, but the guardian ad litem may not be compensated for unnecessary expenses or services.

> 4. Only in extraordinary circumstances does the rule contemplate that a guardian ad litem will have a broader role. Even then, the role is limited to determining whether a party's next friend or guardian has an interest adverse to the party that should be considered by the court under Rule

44. *In no event may a guardian ad litem supervise or supplant the next friend or undertake to represent the party while serving as guardian ad litem.*

TEX. R. CIV. P. 173, cmts. 3, 4 (emphasis added) (internal citations omitted). For the purposes of settlement, Rule 173 limits the guardian ad litem to attending mediation and, if a settlement offer is made, advising the court whether it is in the child's best interest. *See* TEX. R. CIV. P. 173.4(c), (d). But the guardian ad litem cannot bind a child to a settlement agreement absent a court order expressly authorizing the guardian ad litem to do so.

Here, the order appointing Shehan and the order replacing Shehan with Leffingwell are silent as to the guardian ad litem's authority. The record does not reflect that the trial court heard or received evidence about whether a conflict exists as to Clark and Brown in the heirship proceeding or the personal injury lawsuit to warrant enhanced participation by the guardian ad litem or displacement of the next friends. Therefore, the guardian ad litem did not displace Brown and Clark and could not bind J.N.M. and J.M. to the Settlement Agreement. To the extent *Richardson*, *Moses*, or any pre-2005 cases may call for a different result, on the record before us, and the deficiencies noted, we decline to follow them as either distinguishable or inapplicable as herein discussed.

### 3. Whether Brown and Clark Waived their Right to Complain About the Guardian ad Litem's Involvement

Appellees next argue that Brown and Clark waived their right to challenge Leffingwell's appointment and involvement in the fourth mediation. Appellees

–32–

argue that it was Brown who requested a guardian ad litem and he cannot now be heard to complain about the ad litem's involvement. *See* TEX. R. CIV. P. 173.2(a)(2) (authorizing and requiring appointment of a guardian ad litem if "the parties agree"). Appellees further contend that the Settlement Agreement is valid under Rule 11, and Brown and Clark's withdrawal of consent does not "negate the validity of the agreement." *See Gaskin v. Gaskin*, No. 2-06-039-CV, 2006 WL 2507319, at *4 (Tex. App.—Fort Worth Aug. 31, 2006, pet. denied) (mem. op.).

We reject these arguments. While it is true that Brown was the party who sought the appointment of a guardian ad litem, that fact does not prevent Brown and Clark from objecting that the ad litem exceeded her authority. Brown initially requested an ad litem to resolve an apparent conflict of interest between Ford and the minor children during the heirship proceedings. Without the mandated review by the guardian ad litem affirming an adverse interest of Brown and Clark as against their minor children, a hearing confirming the adverse interest, or an order enhancing the role of the guardian ad litem beyond that of an officer and advisor to the court in an heirship proceeding, the scope of authority is subject to challenge. There is a complete dearth of evidence, and the parties cite us to none, as to any agreement beyond the heirship proceeding, or the nature and scope of any prior activity by the guardian ad litem rising to the level of displacing the next friends and retained legal counsel. We conclude on this record that Brown and Clark did not waive their right

to complain that the guardian ad litem purported to bind their minor children to a settlement agreement that they did not agree to.

Appellees misplace their reliance on *Gaskin.* The *Gaskin* court considered a husband's claim that a mediated settlement agreement in a divorce proceeding was a bargained-for exchange. *Gaskin*, 2006 WL 2507319, at *4. Quoting an earlier case, the court explained:

> Ordinarily, settlement agreements arising from mediation are not binding where one party withdraws consent to the agreement, unless the other party successfully sues to enforce the settlement agreement as a contract that complies with rule 11 of the Texas Rules of Civil Procedure.
>
> Unilateral *withdrawal of consent does not, however, negate the enforceability of a mediated settlement agreement* in a divorce proceeding, and a separate suit for enforcement of a contract is not necessary. Rather, section 6.602 creates a procedural short cut for the enforcement of mediated settlement agreements in divorce cases. Thus, a mediated settlement agreement that meets the requirements of section 6.602(b) is binding, and a party is entitled to judgment on the agreement notwithstanding rule 11 or another rule of law.

*Id.* (emphasis added). Appellees rely on the italicized portion of the quote but misapprehend its import on the facts before us, premising the entirety of the argument upon the erroneous assertion that "Leffingwell had the exclusive authority [to negotiate and sign the settlement] on behalf of the Minors." The *Gaskin* court ultimately held that there was nothing in the record that "indicate[d] that the [settlement agreement] was not entered into voluntarily and knowingly." *Id.* The record here, however, is clear and unequivocal that neither Brown nor Clark entered into the settlement voluntarily or knowingly. Brown and Clark objected to the fourth

mediation and the resulting Settlement Agreement and did not execute the Settlement Agreement as next friends. This record does not support the guardian ad litem's purported displacement of the next friends; therefore *Gaskin* is inapposite.

For these reasons, we conclude that Brown and Clark did not waive their right to complain about Leffingwell's authority to enter into the Settlement Agreement on their children's behalf.

### 4. Whether Brown and Clark Have Standing to Challenge the Settlement Agreement on Appeal

Appellees next argue that Brown and Clark lacked standing to challenge the Settlement Agreement. They rely on this Court's opinion in *Grunewald*, 931 S.W.2d at 596. As we explained above, *Grunewald* was decided before Rule 173 was amended. Under the modern version of Rule 173, a guardian ad litem does not displace a next friend and cannot participate in litigation beyond the limitations of the rule unless expressly ordered by the trial court in a written order. *See* TEX. R. CIV. P. 173.4(c), (d). There is no order; therefore Brown and Clark are secure in their roles as next friends with standing to challenge the Settlement Agreement.

### 5. Whether Rule 173.7(c) Precludes Brown and Clark from Challenging the Settlement Agreement or Judgment

In a related argument, appellees assert that Rule 173.7(c) precludes Brown and Clark from challenging the Settlement Agreement and the judgment entered thereon. We acknowledge that "[a]ppellate proceedings to review an order pertaining to a guardian ad litem do not affect the finality of a settlement or

–35–

judgment." TEX. R. CIV. P. 173.7(c). However, the gravamen of Brown and Clark's argument is that final judgment was entered based on a settlement agreement to which they did not consent.

Under Texas law, settlement agreements are contracts and thus governed by principles of contract law. *Angel v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022). It is axiomatic that in order to be bound by a contract, one must be a party to it. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 513 (Tex. 2014) (explaining that courts cannot "bind[] parties to contracts to which they never agreed"). Absent proper authority, a third party cannot bind a person to a settlement agreement. *See First Tr. Corp. TTEE FBO v. Edwards*, 172 S.W.3d 230, 239 (Tex. App.—Dallas 2005, pet. denied) ("[A] person is not bound by a release executed by a third party unless he authorized the third party to act for him."); *Suarez v. Jordan*, 35 S.W.3d 268, 272 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (concluding that trial court erred in entering final judgment on settlement agreement where signatory son had no actual or apparent authority to sign settlement agreement on behalf of father who was party to the suit).

The trial court's order approving the Settlement Agreement and final judgment purport to bind J.N.M. and J.M. to a contract that was signed by neither their next friends nor their attorney. As we explained above, the guardian ad litem also had no authority to bind J.N.M. and J.M. to the Settlement Agreement. We therefore conclude that on this record, Rule 173.7(c) does not preclude Brown and

–36–

Clark from challenging the trial court's approval of the Settlement Agreement and final judgment based thereon on the ground that no authorized representative of their minor children agreed to the settlement or final judgment.

### 6. *Summary*

We conclude that the trial court erred in approving the Settlement Agreement and entering judgment thereon. We sustain Brown and Clark's second issue and do not reach their third or fourth issues.

### C. Administrator's and Guardian ad Litem's Fees

In their fifth issue, Brown and Clark assert that the trial court erred in awarding attorney's fees because there was inadequate evidentiary support for the award. Appellees respond that Brown and Clark lack standing to challenge the fee award because they were not ordered to pay the fees and therefore suffered no injury-in-fact. *See Cadle Co. v. Lobingier*, 50 S.W.3d 662, 669–70 (Tex. App.—Fort Worth 2001, pet. denied). We do not reach this issue. Because we are reversing and remanding this cause for further proceedings, the trial court will have an opportunity to revisit the issue of the administrator's and guardian ad litem's fees, and the evidence supporting said fees, in light of this opinion and applicable precedent. *See Stewart, Cox, & Hatcher, P.C.*, 390 S.W.3d at 298–99.

**CONCLUSION**

We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

220203F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN RE: ESTATE OF JOHNETTA
PATRICE MORGAN, DECEASED

No. 05-22-00203-CV

On Appeal from the Probate Court
No. 3, Dallas County, Texas
Trial Court Cause No. PR-15-02866-3.
Opinion delivered by Justice
Goldstein. Justices Nowell and
Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants ULYSSES BROWN and ERICK CLARK recover their costs of this appeal from appellees CARRUTHERS LANDSCAPE MAINTENANCE, INC., CARLOS SANCHEZ, and ELLEN WILLIAMSON, ANDMINISTRATOR FOR THE ESTATE OF JOHNETTA PATRICE MORGAN.

Judgment entered this 24th day of May 2024.